**Charles Douglas HAWKINS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 194–83.**

Court of Criminal Appeals of Texas, En Banc.

Sept. 21, 1988.

Frank W. Sullivan, III, Fort Worth, for appellant.

Tim Curry, Dist. Atty. & C. Chris Marshall, David H. Montague, Paul Connor, Steve Wallace & James J. Heinemann, Asst. Dist. Attys., Fort Worth, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

ONION, Presiding Judge.

This is an appeal from a conviction for the offense of possession of a controlled substance, to-wit: heroin. After the jury found as "true" the allegation of two prior felony convictions, the punishment was assessed at life imprisonment. On appeal the conviction was affirmed by the Ft. Worth Court of Appeals. *Hawkins v. State*, 644 S.W.2d 764 (Tex.App.–Ft. Worth 1983). That court found the trial court did not err in failing to suppress the introduction of contraband abandoned in the course of what appellant avers to have been an illegal arrest, detention or stop. We granted appellant's petition for discretionary review to determine the correctness of that decision, given the facts of this particular case.

On March 12, 1981, about 8:30 p.m. uniformed Ft. Worth police officer D.L. Marlow, an eight year veteran, was on routine patrol alone on the east side of Ft. Worth, the Stop Six area. This had been his "beat" for three years. In the 2500 block of Stalcup Street Marlow pulled into a parking lot apparently common to the Green Parrot Lounge and the Maddox Club. The area was described as a high crime district and in the particular parking lot abandoned guns and narcotics had been frequently found by the police. As Marlow entered the parking lot, he observed appellant standing in front of the "Maddox Dining Room." Marlow knew appellant's name and his street name of "Hawk," and may have spoken to him in the past. Although Marlow had never arrested appellant, he had heard from narcotics officers that appellant dealt in "dope." The officer admitted he had no arrest warrant, no search warrant and had received no tip from an informant or others concerning the appellant. He was making a routine check of the parking lot. Officer Marlow did not state that he observed any criminal activity. In fact, he did not testify that any person other than appellant was in the parking lot.

As Marlow got out of his patrol vehicle appellant looked toward the police car and started walking north on Stalcup. Officer Marlow called out: "Charles, I want to talk to you. Come here a minute." Appellant hollered "something" back which Marlow did not understand, and continued to walk. Marlow followed on foot, and using a hand radio called the police patrol unit on the next beat stating, "Charles Hawkins is down here and he's walking away from me ... Can you make the Maddox Club?"

Marlow disclaimed any intention to apprehend or arrest appellant, but only desired to talk to appellant and to look to see if he could see whether appellant was carrying a pistol.

Officer Harold T. Maples received and responded to Marlow's call appellant was walking north on Stalcup. He related Marlow did not ask him to stop the appellant, but he thought that was what Marlow meant, "that Marlow needed to talk to Mr. Hawkins for some reason." Maples and a reserve officer, both in uniform, turned their patrol vehicle onto Stalcup and immediately saw appellant walking. Maples pulled the vehicle into a driveway, stepped out and walked four or five steps over to appellant and said, "How are you doing,

Mr. Hawkins?"[1] Marlow was fifty or sixty feet away at the time on the opposite side of the appellant.

When confronted by Officer Maples, appellant jerked his hand out of his pant pocket and threw a paper bag into a nearby drainage ditch. Maples, thinking he was being attacked, grabbed the appellant and pushed him against the patrol car. When Maples realized what had happened he asked Marlow and the reserve officer to watch the appellant, and he retrieved the paper bag and 35 gelatin capsules from the drainage ditch. While he was in the process of doing so, the appellant broke and ran, climbed a fence and escaped.

Appellant was arrested the next day in a hotel room. A chain of custody was established and a chemical analysis of the capsules recovered revealed they contained cocaine and heroin. It is this contraband the appellant contends the trial court erred in failing to suppress.[2]

In addressing appellant's contention that the trial court failed to suppress the paper bag and its contents, the Court of Appeals initially held "that the evidence clearly show[ed] that Hawkins was not illegally arrested or illegally detained." *Hawkins,* supra, at 765. The Court of Appeals then noted: "The relevant issue here is whether abandonment of contraband by an accused renders this contraband admissible as evidence at his trial for possession of that contraband." *Hawkins,* supra, at 765. After briefly discussing four cases, the Court of Appeals concluded that Hawkins had in fact abandoned the contraband and that the contraband was not obtained as a result of his arrest or a search incident thereto.

The general rule in Texas with respect to abandoned property has been that "[w]hen police take possession of abandoned property, there is not a seizure under the Fourth Amendment." *Clapp v. State,* 639 S.W.2d 949, 953 (Tex.Cr.App.1982); see also *Comer v. State,* 754 S.W.2d 656, 658 (Tex.Cr.App.1988) (Opinion on Rehearing); *Rodriguez v. State,* 689 S.W.2d 227, 230 (Tex.Cr.App.1985) (Heroin thrown from automobile was not "product of a search," despite police pretext to stop the accused); *McClain v. State,* 505 S.W.2d 825, 827 (Tex.Cr.App.1974) (Goods thrown from automobile were in open view and not recovered as a result of unlawful search and seizure); *Tatum v. State,* 505 S.W.2d 548, 550 (Tex.Cr.App.1974) (Heroin thrown to the ground by the accused not found as the result of a search). Other cases, as Judge Teague points out in *Comer,* supra, have limited the inquiry to the accused's *intent* to abandon the property. See also *Sullivan v. State,* 564 S.W.2d 698, 702 (Tex.Cr.App.1978) (Opinion on Rehearing) [citing and quoting *United States v. Colbert,* 474 F.2d 174, 176 (5th Cir.1973)]; see also *Smith v. State,* 530 S.W.2d 827, 833 (Tex.Cr.App.1975); *Hudson v. State,* 642 S.W.2d 562, 565 (Tex.App.–Forth Worth 1982, PDR ref'd); *French v. State,* 636 S.W.2d 749, 750 (Tex.App.–Corpus Christi 1982).

However, in *Comer,* supra, at 659, this Court recently distanced itself from the aforementioned line of cases and held "that to resolve abandonment issues there must be a determination of whether the accused voluntarily abandoned the property independent of any police misconduct." *Comer,* supra, thus establishes the following standard for reviewing abandonment cases: 1) a defendant must intend to abandon property, and 2) a defendant must freely decide to abandon the property; the decision must not merely be the product of

---

**1.** Officer Maples knew appellant and had spoken to him in the past but had never arrested him.

**2.** There was no written pre-trial motion to suppress evidence. The suppression hearing occurred in a somewhat unusual manner. After the Rule was invoked, an unrecorded bench conference occurred at the request of appellant's counsel. The jury was retired, and the court informed counsel it would let him ask (Marlow) about the search. Officers Marlow and Maples then testified. At the conclusion of the hearing the court stated it had only to pass on the search question and there had been no search. After a recess the appellant excepted to the court's ruling. The court pointed out that no motion to suppress had been made. Thereupon appellant orally moved to suppress the evidence stating his ground. The motion was overruled. There is no question concerning the preservation of the error.

police misconduct. See also *United States v. Beck*, 602 F.2d 726, 729–30 (5th Cir.1979); *United States v. Morin*, 665 F.2d 765, 770 (5th Cir.1982); *Tankoy v. State*, 738 S.W.2d 63, 67 (Tex.App.–Houston [1st] 1987); *Garcia v. State*, 704 S.W.2d 512, 516 (Tex. App.–Houston [14th] 1986, PDR ref'd).

The Fifth Circuit has noted that abandonment, like consent, must be freely given to be effective. *United States v. Morin*, supra, at 770.

> "The issue is not abandonment in the strict property sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search."

*United States v. Colbert*, supra, at 176; see also *United States v. Morin*, supra, at 770; *Tankoy*, supra, at 67. Although a voluntary abandonment of evidence can remove the taint of an illegal stop or arrest, "it is equally true that for this to occur the abandonment must be truly voluntary and not merely the product of police misconduct." *United States v. Beck*, supra, at 729–30; see also *United States v. Maryland*, 479 F.2d 566, 568 (5th Cir.1973).

Similar standards have been applied in other jurisdictions. For example, a New York Court recently noted "that an examination into a defendant's response to police conduct must be conducted to determine whether abandonment of an article has occurred." *People v. White*, 92 A.D.2d 1033, 461 N.Y.S.2d 515, 516 (A.D.3d 1983). That court's memorandum decision decreed:

> "If an article possessed by a defendant is discarded as a spontaneous reaction to police conduct which is illegal, no abandonment will be found and the article will be inadmissible (citation omitted). However, if the discard is an 'independent act involving a calculated risk,' abandonment will be found and the article is admissible even though the police conduct which preceded the discard may have been illegal." *People v. White*, supra, at 516–17.

The New York court concluded, under the facts of that case, that the defendant's act of throwing a revolver into an empty lot was calculated rather than spontaneous and that the weapon was therefore admissible. Cf. *People v. Baldwin*, 25 N.Y.2d 66, 302 N.Y.S.2d 571, 573, 250 N.E.2d 62, 64 (1969) ("It is axiomatic that, in the absence of a valid abandonment of the property, a search, not authorized by consent or a search warrant, is reasonable only if conducted as incident to a lawful arrest.")

In *State v. Reed*, 284 So.2d 574, 575 (La.1973), overruled on other grounds, *State v. Harvill*, 403 So.2d 706, 710, n. 3 (La.1981), it was written:

> "Abandoned property does not fall within the protection of the Fourth Amendment, and police have the right to retrieve it. (Citations omitted) Property is *not* considered abandoned when a person throws away incriminating articles due to the unlawful activities of police officers." (Emphasis supplied)

In *Reed* the Supreme Court of Louisiana held that no unlawful police activity occurred where officers observed the defendant exit a bar and throw incriminating articles to the ground when he saw the approaching police vehicle.

The Supreme Court of Louisiana in 1978 again had to decide whether certain evidence was abandoned by an accused in response to an illegal stop. *State v. Ryan*, 358 So.2d 1274, 1275 (La.1978). The Louisiana court found that the evidence was abandoned *before* police had intruded on the accused's freedom of movement and since there is no expectation of privacy when property is abandoned, there was no prohibition against seizure of the abandoned property by the police. Cf. *Brown v. United States*, 261 A.2d 834, 835 (Ct. App.D.C.1970) (Recovery of "dropped" bag occurred before any police activity that could be characterized as an illegal arrest or search.)

Finally, in *Lewis v. State*, 518 So.2d 214, 217 (Ala.Cr.App.1987), it was held that "[i]n order for disposal of property to be held abandoned for purposes of Fourth Amendment analysis, the act of disposing of the

property must not have been the result of an illegal detention or unlawful police conduct." [Citing *Carlisle v. State*, 533 So.2d 645 (Ala.Cr.App.1987); *United States v. Beck*, supra; *United States v. Koessel*, 706 F.2d 271 (8th Cir.1983)].

■ These cases, along with our recent opinion in *Comer*, supra, make it clear that if an accused abandons property in response to unlawful police misconduct, the abandonment will not be considered a voluntary or independent act and thus the protections of the Fourth Amendment will apply. However, before we examine whether appellant voluntarily abandoned the contraband independent of any police misconduct, we must first determine whether appellant was the victim of an illegal arrest or an unwarranted investigative stop.

Appellant claims that he was under illegal arrest at the time he abandoned the controlled substances and alternatively that his detention was not a proper "investigative stop" under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). According to Article 15.22, V.A.C.C.P., a person is arrested when he has been "actually placed under restraint" or taken into custody. "Cases determining the 'point of arrest' under this statute have concluded that an arrest occurs at the moment that a person's freedom of movement is restricted or restrained." *White v. State*, 601 S.W.2d 364, 365–66 (Tex.Cr.App.1980) [citing *Hardinge v. State*, 500 S.W.2d 870 (Tex.Cr. App.1973); *Maldonado v. State*, 528 S.W. 2d 234 (Tex.Cr.App.1975)]; see also *McCrory v. State*, 643 S.W.2d 725, 726, n. 3 (Tex.Cr.App.1983); *Ragan v. State*, 642 S.W.2d 489, 491, n. 4 (Tex.Cr.App.1982); cf. *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980) (opinion of Steward, J.): "We conclude that a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." The facts in the instant case do not reveal that appellant was the victim of an illegal arrest prior to the disposal of the contraband.

■ Appellant's claim that his detention was not a proper investigative stop under *Terry*, however, does have merit. The Supreme Court in *Terry* explained that "not all personal intercourse between policemen and citizens involves 'seizures' of persons." *Terry v. Ohio*, supra, 88 S.Ct. at 1879, n. 16. "As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the constitution require some particularized and objection justification." *United States v. Mendenhall*, supra, 100 S.Ct. at 1877. An investigative "stop," on the other hand, occurs "whenever a police officer accosts an individual and restrains his freedom to walk away, ..." *Terry v. Ohio*, supra, 88 S.Ct. at 1877; see also *United States v. Beck*, supra, at 728 (and cases cited therein).[3] The Fifth Circuit has also held that the term "stop," in the Fourth Amendment sense, does not mean a physical stop, but rather a restraint of movement. See *United States, v. Robinson*, 535 F.2d 881, 883, n. 2 (5th Cir.1976); *United States v. Beck*, supra, at 728, n. 1. Such investigative "stops" must be justified by some specific and articulable facts which, in light of a police officer's experience and personal knowledge taken together with rational inferences from those facts, would reasonably warrant the intrusion upon a citizen's freedom. *Terry v. Ohio*, supra, 88 S.Ct. at 1880; *Williams v. State*, 621 S.W.2d 609, 612 (Tex.Cr.App.1981); *McMillan v. State*, 609 S.W.2d 784, 786 (Tex.Cr.App.1981); *Hinson v. State*, 547 S.W.2d 277, 280 (Tex. Cr.App.1977); *King v. State*, 733 S.W.2d

---

**3.** The Supreme Court in *United States v. Mendenhall*, supra, 100 S.Ct. at 1877, listed several "examples" of circumstances that might indicate a seizure, even where an accused does not attempt to leave, namely: 1) the threatening presence of several officers, 2) the display of a deadly weapon by an officer, 3) some physical touching of the person of the citizen, or 4) the use of language or tone of voice indicating that compliance with the officers request might be compelled.

704, 708 (Tex.App.—Dallas 1987); *Padgett v. State*, 723 S.W.2d 780, 782 (Tex.App.—Dallas, PDR granted), accord *United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981) ("totality of circumstances" standard for border patrol); *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979) ("objective manifestation" standard); *United States v. Brignoni–Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975) ("articulable facts" standard for roving border patrol).

■ In the instant case, neither Officer Marlow nor Officer Maples testified that they believed appellant had or was engaged in criminal activity. Furthermore, there was no testimony that either police officer had received information that appellant was engaged in criminal activity. Marlow's testimony that he wanted to talk to appellant to determine if he might have a pistol reinforces the fact that Marlow lacked specific and articulable facts to justify a stop of appellant. There is nothing inherently suspicious about an individual standing in a parking lot of a club at 8:30 p.m. Neither are there any facts indicating anything suspicious about appellant's decision not to be questioned by Officer Marlow but instead to proceed on his way. We hold that the combined activities of the officers effectuated a stop of appellant at a time just prior to his abandonment of the contraband, said stop being unjustified by any specific and articulable facts.

We note that the State's reliance on *Lara v. State*, 469 S.W.2d 177 (Tex.Cr.App. 1971), cert. den., 404 U.S. 1040, 92 S.Ct. 724, 30 L.Ed.2d 732 (1972), and *Galitz v. State*, 617 S.W.2d 949 (Tex.Cr.App.1981), is misplaced. The facts in both of those cases reveal that the officers involved observed suspicious conduct on the part of the person detained and suspicious items on that individual prior to the stop therein. The facts in this case do not reveal any sort of suspicious conduct on the part of appellant or items in his possession to warrant a stop.

Having found initial police misconduct, we must now determine whether appellant abandoned the contraband voluntarily and independent of said misconduct.

The evidence shows that Officer Maples responded to Marlow's call and sought to detain appellant because he thought "that Marlow needed to talk to Mr. Hawkins for some reason." In the process Maples pulled his vehicle into a driveway on Stalcup just a few feet from where appellant was walking, stepped out and approached appellant, asking: "How are you doing, Mr. Hawkins?" Officer Marlow was fifty to sixty feet away and walking toward the appellant from the opposite direction. It was at this point that appellant reached into his pants pocket and threw a paper bag containing contraband into a nearby drainage ditch.

■ The validity of a search of allegedly abandoned evidence will turn on the nexus between the alleged abandonment and the legality of a person's detention. *Tankoy*, supra, at 67.

"To make the determination of voluntary abandonment we must determine if appellant intended to abandon the [contraband] and, if so, then determine whether appellant's decision to abandon the contraband was not merely the product of the illegal acts of the police." *Comer*, supra, at 659.

We cannot say, in the instant case, that appellant's relinquishment of the contraband was voluntary and independent of the unlawful police conduct. Instead, we find, as in *Comer*, supra, that appellant's decision to abandon the evidence was a *direct result* of the misconduct, since the police had no specific and articulable facts on which to base a valid investigative stop. "Therefore, appellant's relinquishment of the [contraband] did not remove the taint of the illegal police conduct." *Comer*, supra, at 659.

In reaching this conclusion we are mindful of the recent decision by the United States Supreme Court in *Michigan v. Chesternut*, —— U.S. ——, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988). In that case a marked police cruiser followed respondent, who had turned and begun to run upon seeing the police. According to one of the

officers the patrol car followed respondent around the corner "to see where he was going." As the police drove up beside him, the officers observed respondent discard a number of packets he pulled from his right-hand pocket. The packets contained narcotic pills.

The Supreme Court applied the test enumerated in *United States v. Mendenhall,* supra, which provides that the police can be said to have seized an individual "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." It was concluded that respondent was *not* seized by the police before he discarded the packets containing the controlled substance.

"Contrary to respondent's assertion that a chase necessarily communicates that detention is intended and imminent, ... the police conduct involved here would not have communicated to the reasonable person an attempt to capture or otherwise intrude upon respondent's freedom of movement. The record does not reflect that the police activated a siren or flashers; or that they commanded respondent to halt, or displayed any weapons; or that they operated the car in an aggressive manner to block respondent's course or otherwise control the direction or speed of his movement. While the very presence of a police car driving parallel to a running pedestrian could be somewhat intimidating, this kind of police presence does not, standing alone, constitute a seizure." *Michigan v. Chesternut,* supra, — U.S. ——, 108 S.Ct. at 1980.

The Supreme Court concluded that the police officers were not required to have "a particularized and objective basis for suspecting [respondent] of criminal activity," in order to pursue him, and held that he was not unlawfully seized during the initial police pursuit.

The facts in the instant case are distinguishable from those described in *Michigan v. Chesternut,* supra. The actions taken by the Ft. Worth police officers were exactly the type not found in the *Chester-*

*nut* case, e.g., actions designed to control the direction of appellant's movement by "closing in" on him in order to detain and question him. The instant case represents more than a mere approach by law enforcement officers, identified as such. Cf. *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).

For the reasons set forth above, we find that the trial court erred when it failed to grant appellant's motion to suppress. The judgments of the Court of Appeals and the trial court are reversed and the cause is remanded to the trial court.

WHITE, J., concurs in the result.

McCORMICK, J., dissents.