**Benito SALCIDO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 221–85.**

Court of Criminal Appeals of Texas, En Banc.

Sept. 21, 1988.

Roddy L. Harrison, Pecos, for appellant.

Jack Louis McGowen, Dist. Atty., Pecos, Robert Huttash, State's Atty., and Julie B. Pollock, Former Asst., State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

ONION, Presiding Judge.

Appellant was convicted in a bench trial of the offense of possession of heroin in an amount of less than 28 grams following his plea of not guilty. The court assessed his punishment at 10 years' imprisonment.

In his sole point of error on appeal, appellant contended that the trial court erred in overruling his pre-trial motion to suppress evidence. His contention being that contraband was obtained by virtue of illegal police conduct; that the officers acted without an arrest or search warrant, without probable cause or without reasonable suspicion based on articulable facts to justify a temporary investigative detention or stop of the appellant; that the abandonment of any contraband was not voluntary given the circumstances.

The Court of Appeals agreed as to appellant's assertion that the police conduct was illegal. It stated, "It is apparent from the record that the Officers had neither probable cause for search and arrest nor any reasonable suspicion based upon articulable facts to modify a temporary investigative detention as in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)."

The Court of Appeals then framed the issue as follows:

> "The question becomes one of whether the State has demonstrated a voluntary pre-search abandonment. *Sullivan v. State*, 564 S.W.2d 698, 730 (Tex.Cr.App. 1977). What is the exclusionary rule effect of an 'abandonment' which is solely triggered by illegal police conduct?"

The Court of Appeals, after some discussion in its unpublished opinion, concluded that given the circumstances the appellant had abandoned the contraband in a place where he had no expectation of privacy waiving his Fourth Amendment rights, without factoring in the legality of the police conduct or assuming that the police conduct was improper. The Court of Appeals rejected the contention that there was error in overruling the suppression motion and affirmed the conviction. *Salcido v. State*, (Tex.App.–El Paso, No. 08–84–00053–CR, Dec. 27, 1984).

We granted the appellant's petition to determine the correctness of the holding of the Court of Appeals that the trial court did not err in overruling the motion to suppress evidence of the contraband.

On May 25, 1983, "about 12:40" Pecos City Police Department Officer Eligio Lujan received information from "an informant"[1] over the telephone that the appellant was "selling fixes" at Babb's Car Wash on 12th and Cedar in Pecos. This

---

1. Lujan did not further describe the individual from whom he received the tip. There is nothing to show whether this "informant" had given true and correct information in the past, nor how he or she had come into possession of the information passed on to Officer Lujan.

meant to Lujan that appellant was "selling heroin at that time." Lujan, who was in mufti, drove to the location given in an unmarked police vehicle, arriving at a location east of the car wash where Lujan observed appellant through a pair of binoculars. Appellant was in the driver's seat of a brown Chevrolet El Camino which had been described to Lujan by the "informant." Lujan continued his surveillance for approximately fifteen to twenty minutes. Appellant did not appear to be using the car wash facilities. He was in an area where the cars were dried, sitting in the El Camino with the car door open talking to two unknown men standing nearby. Lujan did not witness any exchange of drugs or money or anything resembling a sale. He did not observe appellant's hands or arms outside the vehicle. Officer Lujan acknowledged that he did not see the appellant commit any illegal act, and agreed that there was no basis at the time to arrest him.

Lujan testified that after twenty minutes or so, he left his observation post and drove to the police station and informed Police Chief Prewit of his "tip" and his observations. Thereafter, Lujan returned to the car wash with Prewit and Officers Kelley and Snellenberger.[2]

Lujan then described what happened:

"Chief Prewit approached [appellant] who was still in his car behind the wheel, and told him that we had information that he was dealing in heroin and to please step out of the car.

Mr. Salcido exited the car and at that point tried to run from us and at the same time he reached into either his pants pocket or his waistband—I don't recall—and threw a small tin which I thought was a cigarette lighter at the time. I [sic] was a small gold tin."

The gold tin was found to contain small aluminum foil packets which were later shown by the chemist's report to contain heroin. The appellant was arrested and found to have about $1300 on his person.

Chief John Prewit testified that after receiving information from Lujan, he and the three officers proceeded to the car wash. Prewit acknowledged that he was in uniform and that he parked his vehicle directly in front of the El Camino in which the appellant, whom he knew, was seated with the door open. Prewit called appellant by name and appellant said "Hi, Mr. Prewit." The chief then stated he told the appellant he was suspected of dealing in heroin, placed his hand on appellant's shoulder, and told appellant to place his hands on his vehicle. At this point appellant ran and then threw the gold tin against a Dempsey Dumpster a short distance away.

Chief Prewit testified that Lujan arrived at the police station and said "Let's go" and they left within two minutes; that he knew nothing more about appellant's activities other than what Lujan told him; that when he arrived at the car wash he did not observe appellant engaged in any criminal activities. Candidly, Prewit stated that at the time his "intent was to search his person for any contraband such as heroin" and with this intent he approached the appellant.

In *Hawkins v. State*, 758 S.W.2d 255 (Tex.Cr.App.), we held that if an accused abandons property in response to unlawful police misconduct, the abandonment of property or contraband will not be considered a voluntary or independent act, and therefore the protections of the Fourth Amendment will apply. In reaching this conclusion we applied the two-pronged analysis set forth in *Comer v. State*, 754 S.W.2d 656 (Tex.Cr.App.1988) to determine whether the accused voluntarily abandoned the property independent of any police misconduct. That standard for reviewing abandonment cases provides that: (1) a defendant must intend to abandon property, and (2) a defendant must freely decide to abandon the property; the decision must not merely be the product of police misconduct. *Comer*, supra, at 657; see also *United States v. Beck*, 602 F.2d 726, 729–30 (5th

2. When asked on cross-examination what he would have done if, upon his return, the appellant had left the car wash, Officer Lujan replied "Nothing".

Cir.1979); *United States v. Morin,* 665 F.2d 765, 770 (5th Cir.1982); *Tankoy v. State,* 738 S.W.2d 63, 67 (Tex.App.–Houston [1st] 1987); *Garcia v. State,* 704 S.W.2d 512, 516 (Tex.App.–Houston [14th] 1986, PDR ref'd).

In *Hawkins,* supra, a Ft. Worth officer on patrol saw the defendant standing in front of a nightclub in a high crime district and near a parking lot where narcotics were frequently found by police. The officer knew the defendant had a reputation for dealing in "dope". The officer had no warrant and had received no information or tips concerning the defendant. He observed no criminal activity. As the defendant started walking, the officer called to him but the defendant continued to walk. The officer called for assistance over the radio, and as the second officer "closed in" on the defendant, the first officer approached from the opposite direction. The defendant then threw a paper bag in a ditch. Appellant was briefly detained but when the second officer went to pick up the bag, appellant ran and climbed a fence. He was arrested the next day. The bag was found to contain cocaine and heroin.

This Court held that Hawkins had been illegally "stopped" due to a lack of specific and articulable facts to justify the detention and found that the abandonment of the contraband was a *direct result* of the police misconduct. Consequently, Hawkins' relinquishment of the contraband did not remove the taint of the illegal conduct. We conclude that *Hawkins* and *Comer* are controlling in the instant case.

 In the instant case, the officers had neither a warrant nor probable cause to arrest or search nor any reasonable suspicion based upon articulable facts to justify a temporary investigative detention of the appellant. Yet uniformed Chief Prewit

approached appellant with three other officers and told appellant he was suspected of selling heroin and also told appellant to place his hands on the car and then placed his own hand on appellant's shoulder.[3] It was then that appellant broke and ran.

We hold that appellant \.as illegally detained without specific and articulable facts to justify the stop and that he did not voluntarily abandon the contraband in question. It was discarded as a spontaneous reaction to illegal police conduct. It was not an independent act involving a calculated risk. Therefore appellant's relinquishment of the contraband did not remove the taint of the illegal police conduct. See *Comer,* supra.

The trial court erred in overruling appellant's motion to suppress evidence. The judgments of the Court of Appeals and the trial court are reversed. The cause is remanded to the trial court.

McCORMICK and WHITE, JJ., concur in the result.

---

**3.** It cannot be questioned that appellant was "seized" for the purposes of the Fourth Amendment.

In *United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980), the United States Supreme Court listed several examples that might indicate a "seizure," including: (1) *the threatening presence of several officers,* (2) *the display of a deadly weapon by an* officer, (3) *some physical touching of the person of the citizen,* or (4) *the use of language or tone of voice indicating that compliance with the officers' request might be compelled.* (Emphasis supplied). A strong showing of police force, following on the heels of police misconduct, may vitiate the voluntariness of an accused's consent or conduct. Cf. *Meeks v. State,* 692 S.W.2d 504, 510 (Tex.Cr.App.1985).