**Ricardo Lloyd JOHNSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–89–01086–CR.**

Court of Appeals of Texas,
Dallas.

Nov. 27, 1990.

Discretionary Review Granted
March 6, 1991.

R. Kristin Weaver, John Nation, for appellant.

Robert P. Abbott, for appellee.

Before WHITHAM, ROWE and THOMAS, JJ.

## OPINION

THOMAS, Justice.

The trial court convicted Ricardo Lloyd Johnson of aggravated possession of cocaine with intent to deliver and assessed punishment at fifty years' confinement. In two points of error, Johnson complains that: (1) the trial court erred in overruling his motion to suppress because police officers lacked probable cause to make a warrantless arrest and because police officers had insufficient specific articulable facts to justify a temporary investigative detention; and (2) the sentence imposed in this cause is constitutionally excessive. Because we sustain the first point, we do not reach the

second point. The trial court's judgment is reversed and the cause is remanded for further proceedings.

## FACTUAL BACKGROUND

. Dallas Police Officer Charles Ray Bailey testified that at about 1:45 p.m. he and his partner, Officer Clifford E. Lewis, decided to conduct a foot patrol of an apartment complex located in a high-crime area noted for drug transactions, some occurring in public view. The officers approached a breezeway, and Bailey heard someone say that "there was a large stash of marijuana being kept in a house somewhere." Bailey heard two distinctive voices discussing the matter, but he could not see any of the persons in the breezeway. Bailey did not recall anything else being said during the conversation. When Bailey and Lewis walked around the corner of the breezeway, Johnson and two other men immediately began to run. Bailey chased Johnson because he noticed Johnson carrying a "purplish thing," later identified as a Crown Royal bag. During the chase, Bailey twice ordered Johnson to stop running. Bailey noticed Johnson fumbling with what appeared to be a handgun, twice ordered Johnson to drop the weapon, and drew his own weapon in response. Shortly thereafter, the Crown Royal bag and the weapon became dislodged or were dropped by Johnson. Lewis appeared, arrested Johnson, and recovered a loaded 9 mm pistol and the Crown Royal bag containing 162 envelopes of suspected contraband,[1] a small amount of marijuana, and $1,454. Bailey testified that, in his experience, handguns are used during drug transactions and that, before he entered the breezeway, it was reasonable to suspect that someone might be armed.

Lewis testified that, while conducting a patrol of an apartment complex in a high-crime area, he overheard a conversation in a breezeway "about a stash [of marijuana] that someone had somewhere." Lewis could not see who was talking, but he heard two voices. When Lewis and Bailey entered the breezeway three men began to run; the officers pursued only Johnson. During the chase, Lewis observed Johnson fumbling with a gun. Johnson dropped the weapon after the second warning. Lewis further testified that, prior to entering the breezeway, he thought that he had sufficient grounds to make an investigatory detention and that, once Johnson began to run, he was not free to leave the area.

Johnson filed a pre-trial motion to suppress. Because trial was before the court, the trial judge agreed to rule on Johnson's motion at the close of the evidence at the guilt/innocence phase of trial. The trial court overruled Johnson's motion, stating that the officers were entitled to detain and subsequently to arrest and search Johnson.

## MOTION TO SUPPRESS

In the first point, Johnson complains that the trial court erred in overruling his motion to suppress because the police officers lacked probable cause to make a warrantless arrest and because the police officers had insufficient specific articulable facts to justify a temporary investigative detention. The State argues that Johnson's flight upon seeing police, combined with his possession of the Crown Royal bag and the overheard discussion of marijuana, were sufficient to momentarily detain Johnson. The State further asserts that Johnson's abandonment of the weapon and the Crown Royal bag containing drugs supplied probable cause for Johnson's arrest.

■■■ Not all encounters between police and citizens invoke the protection of the Fourth Amendment. *Daniels v. State*, 718 S.W.2d 702, 704 (Tex.Crim.App.1986) (citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). A police officer may briefly stop a suspicious individual in order to determine his identity or to maintain the status quo momentarily while obtaining more information. *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). Law enforcement officers do not

---

**1.** The parties stipulated that the contents of eight envelopes were tested and found to be crack cocaine.

violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 1323, 75 L.Ed.2d 229 (1983). The person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way. *Royer*, 460 U.S. at 497–98, 103 S.Ct. at 1323–24. He may not be detained even momentarily without reasonable, objective grounds for doing so, and his refusal to listen or answer does not, without more, furnish those grounds. *Royer*, 460 U.S. at 498, 103 S.Ct. at 1324. When questioning becomes a detention, however brief, it must be supported by reasonable suspicion. *Daniels*, 718 S.W.2d at 704. Even a brief investigatory stop must be based on specific, articulable facts which, in light of the police officer's experience and general knowledge, together with rational inference from those facts, would reasonably warrant the intrusion on the freedom of the citizen stopped for further investigation. *Hoag v. State*, 728 S.W.2d 375, 380 (Tex.Crim.App.1987); *Stone v. State*, 703 S.W.2d 652, 654 (Tex.Crim.App.1986). A mere hunch is insufficient. There must be a reasonable suspicion by the officer that some activity out of the ordinary is occurring or had occurred, some suggestion to connect the detained person with the unusual activity, and some indication that the activity is related to a crime. *Hoag*, 728 S.W.2d at 380; *Stone*, 703 S.W.2d at 654. Where the events are as consistent with innocent activity as with criminal activity, a detention based on those events is unlawful. *Johnson v. State*, 658 S.W.2d 623, 626 (Tex.Crim.App.1983).

▆ The State concedes in its brief that Johnson was seized when Bailey ordered him to stop running. Bailey and Lewis knew the following facts when they seized Johnson. The officers were patrolling a high-crime area known for drug transactions. They overheard an unseen man in a breezeway state that someone had a large stash of marijuana somewhere. When the officers entered the breezeway, three men immediately ran. Johnson was carrying a "purplish thing," later identified as a Crown Royal bag. We first must determine whether these facts gave rise to reasonable articulable suspicion connecting Johnson to an unusual activity that was related to a crime that was about to occur, that was occurring, or that had occurred.

First, Bailey and Lewis heard an unidentified person in a breezeway say that *someone* had a large stash of marijuana *somewhere*. This vague conversation was insufficient to give Bailey and Lewis reasonable suspicion that Johnson or anyone else in the breezeway was at that time or at any time in the past involved in criminal activity or in possession of any contraband. Neither Bailey nor Lewis testified that they overheard anyone in the breezeway claim ownership or control of the marijuana stash being discussed. There is no testimony that anyone in the breezeway offered to sell the marijuana stash or any other contraband. *Compare Starks v. State*, 661 S.W.2d 756, 757 (Tex.App.—Beaumont 1983, no pet.) (evidence linking appellant to a crime when police overheard the appellant ask someone if he "would like to buy some cocaine"). There is no evidence that the police had received an informant's tip concerning Johnson. Although the officers testified that Johnson's voice was one of the voices they heard in the breezeway, neither Bailey nor Lewis testified that Johnson was the person whom they heard make the statement concerning the marijuana stash. Nothing in the record connects Johnson to the marijuana stash being discussed. Merely knowing where drugs are located or discussing drugs is not a criminal activity proscribed by the Texas Penal Code. We find that such a vague conversation as that testified to by Bailey and Lewis did not give the officers such specific articulable facts as are required to justify stopping Johnson.

Next, there is no evidence in the record that purple bags or Crown Royal bags are carried by drug dealers or that this type of

bag is any type of drug paraphernalia. *Compare Guy v. State*, 751 S.W.2d 284, 286 (Tex.App.—Houston [1st Dist.] 1988, no pet.) (officer developed reasonable suspicion based upon seeing the appellant carrying items known to be associated with marijuana use). We find nothing in the record that would reasonably lead Bailey and Lewis to believe that the "purplish thing" carried by Johnson contained narcotics or any other contraband. Thus, we hold that the fact that Johnson carried the Crown Royal bag did not link him to any criminal activity.

Finally, because neither the overheard conversation nor the Crown Royal bag connected Johnson to any criminal activity, we must determine whether the facts that the events at issue took place in a high-crime area noted for drug transactions and that Johnson fled immediately upon seeing the police officers gave rise to the requisite reasonable suspicion linking Johnson to criminal activity. We recognize that flight may indicate a guilty state of mind. However, Texas appellate courts have held investigatory stops invalid where there was no evidence linking the appellant to criminal activity, even though the appellant was in a high-crime area or fled or attempted to flee upon seeing police officers. *See e.g., Salcido v. State*, 758 S.W.2d 261 (Tex.Crim.App.1988) (appellant tried to run from police; invalid investigatory stop because police did not observe criminal activity); *Hawkins v. State*, 758 S.W.2d 255 (Tex.Crim.App.1988) (appellant in high-crime area ran from police; invalid investigatory detention because no evidence of criminal activity); *Comer v. State*, 754 S.W.2d 656, 658 (Tex.Crim.App.1986) (appellant in high-crime area and attempted to leave as officers approached; invalid investigatory stop because officer observed no other unusual activity); *Pickens v. State*, 712 S.W.2d 560 (Tex.App.—Houston [1st Dist.] 1986, pet. ref'd) (appellant in parking lot of hotel where burglaries frequently occurred put car in reverse and drove away when officer approached; flight and high-crime area alone not sufficient for reasonable articulable suspicion); *compare Calhoun v. State*, 466 S.W.2d 304 (Tex.Crim. App.1971) (probable cause to arrest where police saw appellant run and throw bag inside nearby house after seeing police as appellant was walking eight to ten blocks from scene of alleged burglary); *James v. State*, 629 S.W.2d 92 (Tex.App.—Dallas 1981, pet. ref'd), *cert. denied*, 459 U.S. 987, 103 S.Ct. 340, 74 L.Ed.2d 382 (1982) (officer patrolling high-crime area susceptible to burglaries heard large glass pane break and saw appellant walk away rapidly from the same area; officer had reasonable articulable suspicion for investigatory stop); *United States v. Jacquillon*, 469 F.2d 380 (5th Cir.1972) (probable cause to arrest where officer knew bank had been robbed minutes earlier and that robber had been seen running toward a certain place one block from bank, and saw accused running with green bag; the robbery, flight and officer's observation were substantially contemporaneous events). Neither the overheard conversation about a stash of marijuana that someone had somewhere nor the purple Crown Royal bag gave rise to reasonable suspicion that Johnson was or ever had been engaged in criminal activity. Thus, there was nothing to lead the police officers to believe that Johnson fled upon seeing them because he was engaged in or about to engage in criminal activity. Further, the fact that criminal activity is more likely to occur in one geographical area than another does not by itself satisfy the standards required for an investigatory stop. *Amorella v. State*, 554 S.W.2d 700, 701 n. 1 (Tex.Crim.App.1977) (citing *United States v. Brignoni–Ponce*, 422 U.S. 873, 882, 886, 95 S.Ct. 2574, 2580, 2582, 45 L.Ed.2d 607 (1975)). We hold that the facts that the vague conversation about a marijuana stash overheard by Bailey and Lewis occurred in a high-crime area and that Johnson fled when Bailey and Lewis approached are not sufficient in and of themselves to constitute criminal activity and to validate an investigatory stop.

The flaw in the State's case is that none of the circumstances preceding the officers' detention of Johnson justified a reasonable suspicion that he was involved in criminal conduct. *See Brown v. Texas*,

443 U.S. 47, 51–52, 99 S.Ct. 2637, 2640–41, 61 L.Ed.2d 357 (1979). At most, Bailey and Lewis had a hunch that something might be afoot in the breezeway. However, even in the absence of bad faith, a detention based on a mere hunch is illegal. *Armstrong v. State*, 550 S.W.2d 25, 31 (Tex. Crim.App.1976); *see Meeks v. State*, 653 S.W.2d 6, 12 (Tex.Crim.App.1983). We conclude that the officers lacked reasonable articulable suspicion to detain Johnson.

 Our inquiry does not end with the determination that the police officers lacked sufficient reasonable suspicion to initiate the investigatory stop which preceded Johnson's arrest. We now must determine whether Johnson voluntarily abandoned the Crown Royal bag and the pistol. *Comer*, 754 S.W.2d at 658 (op. on reh'g). If Johnson voluntarily abandoned the Crown Royal bag and the pistol, then the contraband became admissible evidence against him notwithstanding the illegality of the initial detention. *Comer*, 754 S.W.2d at 658. Abandonment consists of two components. A defendant must: (1) intend to abandon the property, and (2) freely decide to abandon the property. *Hawkins v. State*, 758 S.W.2d at 257; *Comer*, 754 S.W.2d at 659. The decision must have been made independent of any police misconduct. *Hawkins*, 758 S.W.2d at 258; *Comer*, 754 S.W.2d at 659. The results of a search or seizure will neither attenuate unlawful police conduct nor be considered in making the determination of whether the police acted lawfully. *Comer*, 754 S.W.2d at 658.

The only courts which have allowed the seizure of evidence that was thrown away have emphasized that no improper or unlawful act was committed by law enforcement officers before the evidence was tossed. *Comer*, 754 S.W.2d at 658.

Abandonment cannot be voluntary if it has been coerced by unlawful police action such as approaching a suspect with the intention to arrest without probable cause or the initiation of an illegal investigatory stop or search. Therefore, when the police are illegally threatening to arrest and search a suspect, and the suspect attempts to divest himself of incriminating evidence that he reasonably believes will be inevitably discovered, his efforts do not constitute such an "abandonment" or voluntary exposure as would waive his constitutional right to later move for suppression of the evidence obtained.... [Citations omitted]

1 W. RINGEL, SEARCHES & SEIZURES ARRESTS AND CONFESSIONS § 8.04(a) (1985) (cited in *Comer*, 754 S.W.2d at 658). We must examine Johnson's response to police conduct to determine whether he voluntarily abandoned the items seized. *Hawkins*, 758 S.W.2d at 258. In the case at bar, the police officers testified that the pistol and the Crown Royal bag either became dislodged or were dropped to the ground by Johnson during the chase after they ordered him to halt. These facts do not indicate that Johnson voluntarily abandoned the items recovered. Instead, his relinquishment of the pistol and the Crown Royal bag was a direct result of the police officers' unlawful seizure. We cannot conclude under the facts of this case that there was no improper or unlawful act by law enforcement officers before Johnson tossed the evidence. Because Johnson's act of relinquishing the pistol and the Crown Royal bag was the result of an illegal detention, we conclude that Johnson's actions were not voluntary and did not remove the taint of the illegal police conduct. *See Hawkins*, 758 S.W.2d at 258–59.

 In light of our holding that Lewis and Bailey illegally detained Johnson and that Johnson involuntarily relinquished the pistol and Crown Royal bag, we reject the State's contention that Johnson's "abandonment" of these items gave rise to probable cause to arrest him. Any probable cause based on Johnson's possession of the pistol arose only as a result of the officer's initial misconduct in seizing Johnson. An unconstitutional intrusion cannot be justified retroactively by evidence uncovered as a result of the intrusion on constitutional rights. *Garza v. State*, 678 S.W.2d 183, 187 (Tex.App.—San Antonio 1984), *aff'd*, 771 S.W.2d 549 (Tex.Crim.App.1989); *see Wilson v. State*, 621 S.W.2d 799, 803–04 (Tex.Crim.App.1981). Because the evi-

dence seized by Lewis and Bailey was the fruit of the poisonous tree, it could not provide the officers with probable cause to arrest Johnson.

 The right of the people of this State to be free from unreasonable searches and seizures involves the right to be let alone. *Olmstead v. United States,* 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944 (1928) (Brandeis, J. dissenting) (cited in *Comer,* 754 S.W.2d at 659). The exclusionary rule has been recognized as a principal mode of deterring lawless police conduct. *Terry,* 392 U.S. at 12, 88 S.Ct. at 1875. Without it, the constitutional guarantee against unreasonable searches and seizures would be a mere form of words. *Mapp v. Ohio,* 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081 (1961). When police conduct invades personal security without the objective evidentiary justification which the constitution requires, its fruits must be excluded from evidence in criminal trials. *Terry,* 392 U.S. at 15, 88 S.Ct. at 1876. "While a police officer must be vigilant and resourceful in combating crime, he is required to do so within the constitutional framework that seeks the preservation of the dignity of the individual." *Comer,* 754 S.W.2d at 659 (quoting Moscolo, *The Role of Abandonment in the Law of Search and Seizure: An Application of Misdirected Emphasis,* 20 Buff.L. Rev. 399 (1971)). Because we conclude that the police officers had neither reasonable articulable suspicion nor probable cause and that Johnson did not voluntarily abandon the pistol and the Crown Royal bag, we conclude that the trial court erred in overruling Johnson's motion to suppress. We sustain the first point.

The judgment of the trial court is reversed and the cause is remanded.

ROWE, Justice, dissenting.

I dissent. Whether sufficient articulable facts justified the police officers' temporary detention of appellant depends upon the *totality* of the circumstances. *See Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). Applying this standard, I agree with the trial judge's implied finding that the officers had reasonable suspicion to briefly intrude upon appellant's freedom through an investigatory stop. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The record shows that the officers, dressed in police uniforms, were patrolling an apartment complex which they knew from prior experience to be a high crime area where drug sales often took place in the open. While unobserved, the officers overheard enough of a drug related conversation to make them suspect that those doing the talking probably were armed and engaging in criminal activity. When the officers suddenly made their presence known, appellant and two other males in the vicinity immediately fled, appellant carrying an unidentifiable "purplish" object. Appellant had to be twice ordered to stop.

While flight from a law enforcement officer cannot alone support a determination of probable cause, flight can provide, *in appropriate circumstances,* the key ingredient justifying a decision of a law enforcement officer to take action. *See United States v. Vasquez,* 534 F.2d 1142 (5th Cir. 1976); *Starks v. State,* 661 S.W.2d 756, 757 (Tex.App.—Beaumont 1983, no pet.). In my judgment, the circumstances shown in this record are adequate to invoke this principle. *See Washington v. State,* 660 S.W.2d 533, 535 (Tex.Crim.App.1983); *Simpson v. State,* 668 S.W.2d 915, 917–18 (Tex.App.—Houston [1st Dist.] 1984, no pet.); *Starks,* 661 S.W.2d at 757. Accordingly, I would overrule appellant's first point of error.

I would also overrule appellant's second point of error complaining that the sentence is constitutionally excessive. The sentence is well within the statutory range, and on this basis we rejected a similar challenge in *Fielding v. State,* 719 S.W.2d 361, 366 (Tex.App.—Dallas 1986, pet. ref'd).

I would affirm the conviction.