

**NUMBER 13-13-00017-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ROBERTO PEREZ,                                         **Appellant,**

**v.**

THE STATE OF TEXAS,                                 **Appellee.**

### On appeal from the 117th District Court
### of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Garza**
**Memorandum Opinion by Justice Garza**

Appellant, Roberto Perez, pleaded guilty to possession of more than one but less than four grams of cocaine, a third-degree felony, and possession of less than one gram of heroin, a state jail felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(b), (c) (West 2010). Perez pleaded true to an enhancement paragraph alleging that he had twice been previously convicted of felonies, and was sentenced to twenty-five and

fifteen years' imprisonment for the respective offenses, with the sentences ordered to run concurrently.  *See* TEX. PENAL CODE ANN. §§ 12.42(d), 12.425(b) (West Supp. 2011).  On appeal, Perez claims that the trial court erred by denying his motion to suppress evidence.  We affirm.

## I. BACKGROUND

Robstown, Texas police officer Ernest Martinez testified that, on the afternoon of March 22, 2012, he observed "a vehicle parked on the wrong side of the road and what appeared to be a hand-to-hand transaction."  Officer Martinez noted that this apparent transaction took place in an area of Robstown where police had "been dealing with a lot of narcotics."  It appeared to the officer that two individuals standing outside the vehicle "were passing back and forth an item."  Officer Martinez testified that, as soon as the two individuals saw that a police officer was present, they "tried to leave that area" and attempted to get back into the parked vehicle.  Officer Martinez asked the men to stop.  Officer Martinez stated that he recognized Perez as one of the individuals as a result of Perez's "prior experiences through the Robstown Police Department."  The other individual was identified as Ricky Guzman.

Officer Martinez testified that both Perez and Guzman were "acting totally different and extremely nervous" and that Perez "had his eyes wide open."  The officer stated:  "The way [Perez] looks at me and the way he immediately starts acting, I— that's not something normal that a normal citizen would have done."  According to Officer Martinez, as soon as Perez saw him, Perez "tried to wave down another vehicle. And it was a city vehicle, so I don't know why he was trying to wave them down."

2

Because the officer did not feel safe, he conducted a pat-down.[1]  At that point, Perez informed Officer Martinez that he had a syringe in one of his pockets.  Officer Martinez placed Perez under arrest for possession of drug paraphernalia.  He then asked Perez to stay in place while he questioned Guzman.  Police officer John Garcia arrived to assist and observed what appeared to be drugs "right next to [Perez's] feet."

A video recording from Officer Martinez's patrol unit was played for the trial court and admitted into evidence at the suppression hearing.  The video shows Perez walking away from an unidentified male and towards Guzman's car as Officer Martinez approaches in his patrol unit.  Guzman's car is parked in front of a residence on the left side of a residential street.  Perez is about to open the passenger-side front door of Guzman's car when Officer Martinez pulls up and stops behind Guzman's car.  At that point, Perez closes the car door and looks quizzically at the patrol unit.  A white pickup truck then passes by, and Perez attempts to get the attention of the truck's driver by waving.  Officer Martinez gets out of his unit, directs Perez to stand at the rear of Guzman's car, and proceeds to question Guzman, who is sitting in the driver's seat.  When Perez is standing near the rear of Guzman's vehicle, he appears to attempt to kick at something on the ground.  Later, Officer Garcia arrives and picks up a small baggie containing a white substance from the area where Perez was standing.

On cross-examination, Officer Martinez conceded that, although his police report described Perez emerging from Guzman's car before the "hand-to-hand transaction" took place, the video recording did not show that.  Officer Martinez explained that the patrol unit's video camera "is not going to capture exactly what I could see from the

---

[1] Officer Martinez initially testified that he asked Perez for consent to conduct a pat-down.  On cross-examination, he acknowledged that he did not ask for consent.

3

window." Officer Martinez further conceded that there is "[n]othing illegal" about conducting a "hand-to-hand transaction"; rather, "it's just suspicious, when that whole area is known for drug activity and there is a car parked on the side [of the road]." He agreed with defense counsel that the "hand-to-hand transaction" he observed might have been a handshake. He further conceded that Perez's father works for the City of Robstown, although he did not remember seeing Perez's father driving the "city vehicle" that Perez tried to "wave down." Officer Martinez agreed with defense counsel that Perez never made any "furtive movements."

The trial court denied Perez's motion to suppress the drug evidence. No findings of fact or conclusions of law were requested. Perez later pleaded guilty and was convicted. The trial court certified Perez's right to appeal, and this appeal followed.[2]

## II. DISCUSSION

### A. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). Trial judges are uniquely situated to observe the demeanor and appearance of any witnesses and, as the sole fact-finder at a suppression hearing, may believe or disbelieve any portion of a witness's testimony and make reasonable inferences from the evidence presented. *Amador v. State,* 275 S.W.3d 872, 878 (Tex. Crim. App. 2009). Accordingly, we afford almost total deference to a trial court's determination of the historical facts that the record supports, especially when the determination is based on an evaluation of credibility and demeanor. *Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Crim. App. 1997) (en banc). We afford the same amount of

---

[2] The State has not filed a brief to assist us in the resolution of this matter.

deference to trial courts' rulings on "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *See id.* On the other hand, we conduct a de novo review of evidence when the resolution of mixed questions of law and fact do not turn on an evaluation of credibility and demeanor. *St. George*, 237 S.W.3d at 725 (citing *Guzman*, 955 S.W.2d at 89).

Whether a specific search or seizure is reasonable or supported by probable cause is a question of law subject to de novo review. *Dixon v. State,* 206 S.W.3d 613, 616 (Tex. Crim. App. 2006). During our review, we consider all the evidence in the light most favorable to the trial court's ruling. *State v. Iduarte,* 268 S.W.3d 544, 548 (Tex. Crim. App. 2008). Where a trial court does not enter any findings of fact, we "assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record." *State v. Ross,* 32 S.W.3d 853, 858 (Tex. Crim. App. 2000) (en banc). We will uphold the ruling so long as it is supported by the record and correct under any legal theory applicable to the case. *Iduarte,* 268 S.W.3d at 548.

## B.    Applicable Law

"It has been an accepted part of state and federal jurisprudence for many years that law enforcement officers may stop and briefly detain persons suspected of criminal activity on less information than is constitutionally required for probable cause to arrest." *Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997) (quoting *Crockett v. State*, 803 S.W.2d 308, 311 (Tex. Crim. App. 1991)). To justify an investigative detention, the officer must have a reasonable suspicion that the person detained is, has been, or soon will be engaged in criminal activity. *Derichsweiler v. State*, 348 S.W.3d 906, 914–15

(Tex. Crim. App. 2011). Reasonable suspicion requires specific, articulable facts based on the officer's experience and personal knowledge that, when coupled with the logical inferences from those facts, would warrant the intrusion on the detainee. *Davis*, 947 S.W.2d at 244 (citing *Garza v. State*, 771 S.W.2d 549, 558 (Tex. Crim. App. 1989)). "These facts must amount to more than a mere hunch or suspicion." *Id.* "The articulable facts used by the officer must create some reasonable suspicion that some activity out of the ordinary is occurring or has occurred, some suggestion to connect the detainee with the unusual activity, and some indication that the unusual activity is related to crime." *Meeks v. State*, 653 S.W.2d 6, 12 (Tex. Crim. App. 1983), *abrogated on other grounds by Holcomb v. State*, 745 S.W.2d 903 (Tex. Crim. App. 1988). The test for reasonable suspicion focuses solely on whether an objective basis exists for the detention and disregards the officer's subjective intent. *See Abney v. State*, 394 S.W.3d 542, 550 (Tex. Crim. App. 2013) ("[A]n officer's mistake about the legal significance of facts, even if made in good faith, cannot provide probable cause or reasonable suspicion.").

**C.    Analysis**

Perez argues that there is "nothing suspicious" about "approaching a car and shaking hands with the driver," "[waving] towards a city vehicle as it pass by," or "being nervous around police officers." Therefore, according to Perez, Officer Martinez's actions amounted to an illegal detention and the drug evidence obtained by police as a result of that detention should have been suppressed by the trial court. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23 (West 2005) ("No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or

6

of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.").

Perez contends that his case is analogous to *Hawkins v. State*, 758 S.W.2d 255 (Tex. Crim. App. 1988). In that case, a Fort Worth police officer encountered the defendant, Charles Hawkins, walking in the parking lot of a nightclub located in a high-crime area. *Id.* at 256. The officer knew Hawkins's name from his prior dealings with the police department. *Id.* As here, the officer conceded that he observed no criminal activity. *Id.* When the officer asked Hawkins to "[c]ome here a minute," Hawkins instead continued walking. *Id.* Another officer arrived, stepped out of his vehicle and confronted Hawkins, at which point Hawkins threw a paper bag, later confirmed to contain cocaine and heroin, into a nearby drainage ditch. *Id.* at 256–57. The *Hawkins* Court stated that, "[a]lthough a voluntary abandonment of evidence can remove the taint of an illegal stop or arrest, 'it is equally true that for this to occur the abandonment must be truly voluntary and not merely the product of police misconduct.'" *Id.* at 258 (quoting *United States v. Beck*, 602 F.2d 726, 729–30 (5th Cir. 1979)); *see Clapp v. State*, 639 S.W.2d 949, 953 (Tex. Crim. App. 1982) (holding that, when police take possession of abandoned property, there is no "seizure" under the Fourth Amendment). Thus, "if an accused abandons property in response to unlawful police misconduct, the abandonment will not be considered a voluntary or independent act and thus the protections of the Fourth Amendment will apply." *Id.* at 259. The admissibility of the drug evidence therefore turned on whether the detention was illegal. *See id.* at 260 ("The validity of a search of allegedly abandoned evidence will turn on the nexus between the alleged abandonment and the legality of a person's detention."). The Court

concluded that Hawkins's detention was illegal because "police had no specific and articulable facts on which to base a valid investigative stop":

> In the instant case, neither [officer] testified that they believed appellant had or was engaged in criminal activity. Furthermore, there was no testimony that either police officer had received information that appellant was engaged in criminal activity. . . . There is nothing inherently suspicious about an individual standing in a parking lot of a club at 8:30 p.m. Neither are there any facts indicating anything suspicious about appellant's decision not to be questioned by [the first officer] but instead to proceed on his way. . . . The facts in this case do not reveal any sort of suspicious conduct on the part of appellant or items in his possession to warrant a stop.

*Id.* (contrasting *Lara v. State*, 469 S.W.2d 177 (Tex. Crim. App. 1971), and *Galitz v. State*, 617 S.W.2d 949 (Tex. Crim. App. 1981), wherein officers involved observed "suspicious conduct on the part of the person detained and suspicious items on that individual prior to the stop").

Perez also directs us to *Comer v. State*, where the court of criminal appeals held that evidence should have been suppressed because: "We find it difficult to discover any facts showing activity out of the ordinary . . . save that the officer described the area as being one of high crime and that appellant attempted to leave as the officers approached." 754 S.W.2d 656, 658 (Tex. Crim. App. 1986).

The instant case is similar but not directly analogous to *Comer* and *Hawkins*. In those cases, as here, the suspect abandoned contraband as a result of police action, so the admissibility of the evidence turns on the legality of the detention. As in *Comer*, the investigative stop took place in a high-crime area. *See id.* And, as in *Hawkins*, there was no direct evidence that the accused was doing anything illegal at the time he was stopped. *See* 758 S.W.2d at 260. However, Officer Martinez testified as to additional "articulable facts" that would support reasonable suspicion in this case. In particular,

8

Officer Martinez testified that Perez emerged from a vehicle that was parked on the wrong side of the road. The officer could have logically inferred from this fact alone that Perez and Guzman were involved in criminal activity; i.e., violating traffic laws by driving on the wrong side of the road. *See* TEX. TRANSP. CODE ANN. § 542.301 (West 2011) (stating that failure to comply with traffic laws is a misdemeanor); *id.* § 545.051(a) (West 2011) (providing generally that "[a]n operator on a roadway of sufficient width shall drive on the right half of the roadway" and providing exceptions not applicable here); *see also Johnson v. State*, 06-11-00004-CR, 2011 WL 2418422, at *3 (Tex. App.—Texarkana June 14, 2011, no pet.) (mem. op., not designated for publication) (noting that the investigative stop of a suspect was legal because the suspect "parked his vehicle in front of a driveway, and this is a violation of the [transportation code]").[3]

The evidence in this case, considered in the light most favorable to the trial court's ruling, *see Iduarte,* 268 S.W.3d at 548, establishes that Officer Martinez had more than a "mere hunch or suspicion" that Perez had engaged or was about to engage in criminal behavior. *See Davis*, 947 S.W.2d at 244. Accordingly, the investigative stop was legal and trial court did not err by denying Perez's motion to suppress evidence obtained as a result of that stop.

---

[3] As noted, Officer Martinez also testified that Perez acted "extremely nervous," "had his eyes wide open" and "tried to wave down another vehicle" when the officer approached Guzman's vehicle. A suspect's nervousness is not suspicious in and of itself but may be considered as a factor in making a determination of reasonable suspicion. *Hamal v. State*, 390 S.W.3d 302, 308 (Tex. Crim. App. 2012). The video recording shows Perez attempting to wave down a vehicle, but we cannot say that it clearly shows Perez acting "extremely nervous." In any event, we need not determine whether these actions established reasonable suspicion because of our conclusion herein that the officer may have logically inferred that Perez and Guzman violated traffic laws. For the same reason, we need not determine whether Perez's "hand-to-hand transaction"—which Officer Martinez conceded may have merely been a handshake—gave rise to reasonable suspicion.

9

## III. CONCLUSION

We affirm the judgment of the trial court.


DORI CONTRERAS GARZA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
21st day of November, 2013.