Affirmed and Memorandum Opinion filed February 14, 2006









Affirmed
and Memorandum Opinion filed February 14, 2006.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00674-CR

____________

 

KENOL
LUXAMA, Appellant

 

V.

 

THE STATE
OF TEXAS, Appellee

__________________________________________________________

 

On Appeal from the 344th District Court

Chambers County, Texas

Trial Court Cause No. 11937

__________________________________________________________

 

M E M O R A N D U M   O P I N I O N

Challenging his conviction for
possession of a controlled substance (cocaine) with intent to deliver,
appellant, Kenol Luxama, asserts that the trial court abused its discretion by
denying his motion to suppress evidence he claims was illegally obtained.  Appellant also challenges the legal and
factual sufficiency of the evidence supporting his conviction and various
evidentiary rulings by the trial court. 
We affirm. 








I.  Factual and Procedural
Background

In the early morning hours of
September 11, 2001, Trooper Lawrence Lilly of the Department of Public Safety
was sitting stationary in his patrol car on Interstate 10 in Chambers
County.  Trooper Lilly observed a U-Haul
rental truck with a license plate that was dirty and unreadable, a violation of
state traffic laws, and so Trooper Lilly conducted a traffic stop.  Appellant was driving the vehicle and Bertin
Loubeau was in the passenger seat.  After
the stop, both individuals got out of the U-Haul.  Trooper Lilly examined the license plate and
still was unable to read it until he was right on top of it.  He informed appellant and Loubeau that he had
stopped them because they had violated a state traffic law by operating a
vehicle with an unreadable license plate. 


Trooper Lilly noticed that
appellant=s and Loubeau=s
demeanor was inconsistent with individuals stopped for a minor traffic
violation in that they were fidgety, very nervous, and made no eye
contact.  Trooper Lilly then asked
routine questions, such as where they were headed.  Appellant stated they were headed to Florida;
Loubeau stated they were going to Beaumont, Texas.  Trooper Lilly then asked them who owned or
had rented the U-Haul. The men again were inconsistent in their responses.  Appellant stated Loubeau was the renter of
the truck; Loubeau stated a woman named ASarah@ had
rented the truck.  At this point, Trooper
Lilly decided to get closer to the license plate to discern what was covering
it.  He concluded, after attempting to
remove the substance, that it was spray paint. 
Trooper Lilly called for verification of the license plate number.  While he was waiting, Trooper Lilly again
spoke to appellant, who stated the items in the U-Haul belonged to Loubeau,
although appellant previously had stated they belonged to a female friend. 








At this point, Trooper Lilly
became suspicious and requested appellant=s consent
to search the U-Haul.  Although Trooper
Lilly had seen appellant in the driver=s seat,
appellant claimed he had not been driving and stated the contents of the truck
belonged to Loubeau, not him.  Trooper
Lilly then asked and received Loubeau=s consent
to search.  Loubeau gave Trooper Lilly
the key to the U-Haul.  Upon opening the
rear of the truck, Trooper Lilly discovered it was filled with furniture and
appliances, including, among other things, mattresses, a couch, an old
television, a washer, a dryer, and a stove.  
The furniture and other items, however, were very old and dirty and it
appeared to him that the contents of the truck could be a Acover
load.@  Trooper Lilly then requested a drug detection
canine and back-up.  Trooper Lilly also
noticed the U-Haul smelled like Pinesol, a cleaning product, which, based on
his extensive training and experience in narcotics, was frequently used to mask
the smell of narcotics.  While waiting
for the canine unit and back-up, Trooper Lilly began to investigate the
contents of the U-Haul.  The television
was an older model and Trooper Lilly noticed there was fresh glue on the back
of it.  He took a knife out of his pocket
and made a small hole in the back of the cardboard covering the back of the
television.  Inside the television,
Trooper Lilly noticed large amounts of a substance that resembled cocaine.  He immediately placed appellant and Loubeau
into custody.  Corporal Smith and the
drug detection canine arrived approximately five minutes later and assisted
with the rest of the search.  

The U-Haul was then impounded and
taken to the Baytown Highway Patrol office for safety reasons and to check the
contents more thoroughly for contraband. 
Additional cocaine was discovered in the washer and dryer, between the
drum and oil well.  Each bundle of
cocaine appeared to have toothpaste on its exterior.  The amount of cocaine found inside the U-Haul
totaled 75 kilograms.  Appellant was
arrested and charged with the offense of possession of a controlled substance,
in an amount of four hundred grams or more, with the intent to deliver.  Appellant pleaded not guilty.  








At the time of his arrest
appellant had two receipts in his wallet. 
The first showed the purchase of an electric stove, air conditioner, and
dryer on September 6, 2001; the second showed the purchase a sofa, mattress,
box spring, bed frame, and television from the Salvation Army on September 10,
2001.  At trial, the State used these
receipts to tie appellant to the contraband. Captain Richard Miller of the
Freeport Police Department testified he had been investigating a ship, MV
Salome, suspected for narcotics trafficking, and believed that ship was
going to come into Freeport, Texas.  On
September 10, 2001, the date on the second receipt, Captain Miller,
investigating suspicious activity, went to a storage facility (Brazos Self
Storage) owned by Ms. Cameron.  At trial,
Ms. Cameron testified the U-Haul and appellant=s vehicle
had been at that location.  Captain
Miller testified he had stopped appellant=s vehicle
in his jurisdiction earlier on September 10, 2001.  Additionally, Ms. Cameron stated appellant
told her that he owned the MV Salome. 
Captain Miller received a search warrant for the storage unit in
question, and found empty packaging consistent with packing controlled
substances.  Captain Miller also found
masking tape, empty toothpaste boxes, empty toothpaste tubes, engine grease,
and Pinesol.  A narcotics canine was
summoned to the location and alerted within the storage unit.  

The woman who actually rented the
U-Haul, Sarah Wright, also testified for the State.  Wright knew appellant and referred to him as AKenny.@  She rented the U-Haul at the request of
another individual, Antoine Joseph.  At
the time, Wright believed the U-Haul was to be used to pick up some appliances
at Mr. Mo=s appliance store.  Wright went to the appliance store for the
pick-up to make sure this was true. 
Wright further testified that when they arrived at the appliance shop,
the proprietor (Mr. Mo) mentioned they were to pick up some appliances that AKenny@ had
purchased.  Wright also saw a receipt at
the appliance shop with appellant=s name on
it. 

A jury found appellant guilty of
the charged offense, and the trial court, in a separate punishment hearing,
assessed punishment at fifty years=
confinement in the Texas Department of Criminal Justice, Institutional
Division.  

II.  Issues Presented

Appellant presents the following
points for appellate review: 








(1)       The trial court abused its discretion by denying appellant=s oral motion to suppress
evidence obtained as the result of an allegedly illegal search and seizure. 

(2-3)   The evidence is legally and factually
insufficient to support conviction of possession of a controlled substance
(cocaine) with the intent to deliver.

(4)       The trial court abused its discretion in overruling appellant=s hearsay and notice
objections as to the receipts found in appellant=s wallet.

(5)       The trial court abused its discretion in
overruling appellant=s
objections to the introduction of alleged extraneous-offense evidence. 

III.  Analysis

A.        Did the trial court abuse its discretion
by denying appellant=s oral motion to suppress evidence allegedly
obtained as the result of an illegal search and seizure? 

In his
first issue, appellant argues the trial court erred in overruling his oral
motion to suppress evidence seized during a warrantless search.  We review the trial court=s ruling
on a motion to suppress under an abuse‑of‑discretion standard.  Long v. State, 823 S.W.2d 259, 277 (Tex.
Crim. App. 1991).  A trial court=s ruling
on a motion to suppress, if supported by the record, will not be overturned.  Brooks v. State, 76 S.W.3d 426, 430 (Tex.
App.CHouston
[14th Dist.] 2002, no pet.).  At a
suppression hearing, the trial court is the sole finder of fact and is free to
believe or disbelieve any or all of the evidence presented.  Id. 
We give almost total deference to the trial court=s
determination of historical facts that depend on credibility and demeanor, but
we review de novo the trial court=s
application of the law to the facts if resolution of those ultimate questions
does not turn on the evaluation of credibility and demeanor.  See Guzman v. State, 955 S.W.2d 85, 89
(Tex. Crim. App. 1997).








When, as
in this case,  the trial court fails to
file findings of fact, we view the evidence in the light most favorable to the
trial court=s ruling and assume that the
trial court implicitly made findings of fact that support its ruling as long as
those implied findings of fact are supported by the record.  State v. Ross, 32 S.W.3d 853,
855 (Tex. Crim. App. 2000).  Because the
trial judge was free to believe any or all evidence presented and to make a
determination of historical facts supported by the record after evaluating the
credibility and demeanor of the witnesses at the hearing, we give the trial
court=s
decision deference.  See Guzman,
955 S.W.2d at 89.  Appellant argues
Trooper Lilly did not have probable cause to stop the U-Haul and conduct the
search and seizure.  We disagree with
appellant=s arguments. We conclude that not
only did Trooper Lilly have probable cause to stop the vehicle, the resulting
search and seizure were based on valid consent. 

We begin
with the initial traffic stop.  A police
officer may stop and temporarily detain a driver for a traffic violation, and
he may arrest for offenses discovered while investigating the traffic offense
and search the car and the area of the car incident to the discovered offense.  McVickers v. State, 874 S.W.2d 662, 664
(Tex. Crim. App. 1993) (holding officer may stop and detain for traffic
offense); Armitage v. State, 637 S.W.2d 936, 939 (Tex. Crim. App.
1982).  Section 502.409 of the Texas
Transportation Code states in relevant part: 

(a) A person commits an
offense if the person attaches to or displays on a motor vehicle a number plate
or registration insignia that:

. . .

(5)
has letters, numbers, or other identification marks that because of blurring or reflective matter are not plainly
visible at all times during daylight;

(6) has an
attached illuminated device or sticker, decal, emblem, or other insignia that
is not authorized by law and that interferes with the readability of the
letters or numbers on the plate or the name of the state in which the vehicle
is registered; or

(7) has a
coating, covering, or protective material that:








(A) distorts
angular visibility or detectability; or

(B) alters or obscures the letters or numbers on the plate, the
color of the plate, or another original design feature of the plate.

Tex.
Transp. Code Ann. ' 502.409
(Vernon 2003) (emphasis added).  Trooper
Lilly observed the U-Haul pass with a license plate that was dirty and
unreadable.  Knowing that having an
unreadable license plate is a violation of state traffic laws, Trooper Lilly
initiated a traffic stop.  He was unable
to read the license plate until he was right next to it.  When he bent down to scrape off the
substance, he realized the license plate had been covered with spray
paint.  He informed appellant and Loubeau
that he had stopped the vehicle because they violated a state traffic law by
operating the U-Haul with an unreadable license plate.  It was reasonable for Trooper Lilly to
conduct an investigation of this traffic law infraction.  See Berkemer v. McCarty, 468 U.S. 420,
439, 104 S. Ct. 3138, 3149B50, 82 L.
Ed. 2d 317 (1984); Martinez v. State, 29 S.W.3d 609, 611 (Tex. App.CHouston
[1st Dist.] 2000, pet. ref=d).  








To
determine the reasonableness of the investigative detention, we apply the Terry
test inquiry. Specifically, we must ascertain: (1) whether the officer=s action
was justified at its inception; and (2) whether such action was reasonably
related in scope to the circumstances that justified the initial interference.  Terry v. Ohio, 392 U.S. 1, 19B20, 88 S.
Ct. 1868, 1879, 20 L. Ed. 2d 889 (1968). 
The investigative detention must be temporary and cannot last longer
than necessary to (1) determine why the license plate was covered, (2) check
for outstanding warrants, and (3) request documentation, i.e., (i) a driver=s
license; (ii) insurance papers; and (iii) identification.  Davis v. State, 947 S.W.2d 240, 244
n.6 (Tex. Crim. App. 1997).  Additionally,
the officer may ask about the driver=s
destination and purpose of travel during a valid detention.  Powell v. State, 5 S.W.3d 369, 377
(Tex. App.CTexarkana 1999, pet. ref=d).  Trooper Lilly asked appellant for his driver=s license
and questioned him about his previous whereabouts.  After noticing that both driver and passenger
were fidgety, very nervous, and made no any eye contactCdemeanor
that was not typical of individuals stopped for a minor traffic violationCTrooper
Lilly then asked routine questions.  The
men were inconsistent in their answers. 
Trooper Lilly then called in the license plate number and again asked
appellant who owned the items in the U-Haul. 
Appellant stated the items in the U-Haul belonged to Loubeau, although
he previously had stated they belonged to a female friend.  Trooper Lilly was well within the temporal
scope of the initial investigation because the routine procedures, such as
running a check on the driver=s license
or a background, had not been completed.  See Davis, 947 S.W.2d at 245.  

Based on
their answers to his questions and their unusual demeanor, Trooper Lilly became
suspicious and requested consent to search the U-Haul.  The officer had not yet completed his traffic
investigation when he requested and received consent to search.  See State v. Cardenas, 36 S.W.3d 243,
247 (Tex. App.CHouston [1st Dist.] 2001, pet.
ref=d). A
voluntary consensual search is an exception to the probable cause and warrant
requirements of the Fourth Amendment to the United States Constitution and
Article I, Section 9 of the Texas Constitution.  Reasor v. State, 12 S.W.3d 813, 817 (Tex.
Crim. App. 2000).  The State has the
burden of proof by clear and convincing evidence that consent was freely and
voluntarily given.  State v. Ibarra,
953 S.W.2d 242, 245 (Tex. Crim. App. 1997). 
Although we defer to the trial court for fact findings, we review de
novo the legal question of whether consent was voluntary.  Guzman, 955 S.W.2d at 87.  Consent must not be the product of duress or
coercion, express or implied.  Reasor,
12 S.W.3d at 817.  It must be positive
and unequivocal, and it is not shown by acquiescence to a claim of lawful
authority.  Allridge v. State, 850
S.W.2d 471, 492B93 (Tex.
Crim. App. 1991).  Whether consent was
voluntary is determined from the totality of the circumstances.  Reasor, 12 S.W.3d at 818. An
officer=s testimony
that consent was voluntarily given can be sufficient evidence to prove the
voluntariness of the consent.  Martinez v. State, 17 S.W.3d 677, 683
(Tex. Crim. App. 2000); Morris v. State, 50 S.W.3d 89, 99 (Tex. App.CFort
Worth 2001, no pet.).








Trooper
Lilly testified Loubeau gave consent to search after appellant renounced
ownership of the contents of the vehicle. 
Despite appellant=s
contentions, it is unclear from the videotape (which is fuzzy and slightly out
of focus) if this is untrue.  Because the
trial court is the ultimate arbiter of the facts that turn on the credibility
of the witnesses, we must give deference to its fact findings.  Johnson v. State, 68 S.W.3d 644, 652
(Tex. Crim. App.  2002).  Considering the totality of the
circumstances, and finding no evidence of coercion or duress, we conclude the
record supports a determination that Loubeau voluntarily consented for Trooper
Lilly to search the U-Haul.  See
Reasor, 12 S.W.3d at 818.  

Next, we
examine whether the search exceeded the scope of the consent.  The extent of a valid search is limited to
the scope of the consent given, and the scope of the consent is generally
defined by its expressed objective.  DuBose
v. State, 915 S.W.2d 493, 496 (Tex. Crim. App. 1996).  The standard for measuring the scope of
consent is that of Aobjective
reasonableness@Cwhat the
typical reasonable person would have understood by the exchange between the
officer and the individual.  Id.  Trooper Lilly asked for permission to search
the U-Haul based on the conflicting information received and the behavior of
appellant and Loubeau.  Upon opening the
rear of the U-Haul, Trooper Lilly noticed the furniture was very old and
dirty.  Trooper Lilly concluded it might
be a Acover
load.@  Trooper Lilly also noticed the U-Haul smelled
like a household cleaning product frequently used to mask narcotics.  He noticed an old television with fresh glue
on the back of it.  Trooper Lilly took a
knife out of his pocket, made a small hole in the cardboard on the back of the
television to look inside.  The object of
the requested search was narcotics, and the subsequent search, including the
use of the trained canine, did not exceed the scope of the consent given.  See Estrada v. State, 30 S.W.3d 599, 603
(Tex. App.CAustin 2000, no pet.). 








We
further conclude this consent to search was valid as to appellant as he
specifically failed to show that his own privacy rights were violated.  It is well recognized that a defendant may
challenge a search and seizure only if he had a legitimate expectation of
privacy in the place where the police found the evidence.  Rawlings v. Kentucky, 448 U.S. 98,
104, 100 S. Ct. 2556, 2561, 65 L. Ed. 2d 633 (1980); Rakas v. Illinois,
439 U.S. 128, 143B45, 99 S.
Ct. 421, 430B31, 58 L. Ed. 2d 387 (1978); Liebman
v. State, 652 S.W.2d 942, 944 (Tex. Crim. App. 1983).[1]  A defendant, who bears the burden of
demonstrating a legitimate expectation of privacy, can meet this burden by
establishing he had a subjective expectation of privacy in the place invaded
that society is prepared to recognize as reasonable.  Granados v. State, 85 S.W.3d 217,
223 (Tex. Crim. App. 2002). 

We note
that in some cases, the issue of whether a reasonable expectation of privacy
exists and the issue of abandonment are separated by only a fine line.  Where ownership is abandoned or disclaimed
prior to a search, no Fourth Amendment violation occurs because the defendant
has no legitimate expectation of privacy in property that already has been
abandoned.  Franklin v. State, 913
S.W.2d 234, 240 (Tex. App.CBeaumont
1995, pet. ref=d).  If a privacy expectation has not been
abandoned at the time of the search, however, the defendant may raise
complaints regarding the search.  Id.  For abandonment to occur, a defendant must (1)
intend to abandon the property, and (2) freely decide to abandon the property;
i.e., the decision must not be merely the product of police misconduct.  Salcido v. State, 758 S.W.2d 261, 263
(Tex. Crim. App. 1988).








Whether
an individual has abandoned or disclaimed property may be inferred from his
words, acts, or other facts.  Armstrong v. State, 966 S.W.2d 150, 153
(Tex. App.CAustin 1998, no pet.).  In this case, appellant specifically
renounced any ownership in the vehicle, stating that he did not rent the
vehicle nor did he own its contents.  Appellant
had the opportunity to either give or withhold consent when he was asked;
instead, he elected to direct the officer to Loubeau, who gave consent.  We conclude appellant freely intended to
abandon any interest in the property and its contents, and the trial court was
correct in overruling appellant=s motion
to suppress.  See Hypolite v. State,
985 S.W.2d 181, 185B88 (Tex.
App.CSan
Antonio 1998, no pet.) (holding that because [Hypolite] disclaimed any
legitimate expectation of privacy in the suitcase, he cannot complain that his
Fourth Amendment rights were violated by the subsequent search of the
suitcase); O=Shea v.
State, 740 S.W.2d 527, 528 (Tex. App.CHouston
[14th Dist.] 1987, no pet.) (stating when a defendant abandons the property or
any interest in prior to the search, the defendant has no standing to contest
its seizure and seek its suppression as evidence); Tankoy v. State, 738
S.W.2d 63, 67 (Tex. App.CHouston
[1st Dist.] 1987, no pet.) (stating police officers were free to open and
search baggage without a warrant or consent, as bag and its content were
abandoned by defendant and codefendant when both denied ownership of baggage);
Johnson v. State, 684 S.W.2d 129, 131B32 (Tex.
App.CHouston
[14th Dist.] 1984, no pet.) (holding that because appellant readily admitted on
the witness stand he had no interest whatsoever in the car or its contents, he
may not  now complain the search and
seizure was unlawful simply because the evidence was used against him).  We conclude that not only did Trooper Lilly
have probable cause to stop the vehicle, the resulting search and seizure were
based on valid consent.  Accordingly, we
overrule appellant=s first
issue. 

B.        Is the evidence legally and factually
sufficient to support appellant=s conviction of possession
of a controlled substance (cocaine) with the intent to deliver?

In his
second and third issues, appellant argues the evidence is legally and factually
insufficient to support his conviction of possession of a controlled substance,
namely cocaine, with the intent to deliver. 








In
evaluating a legal sufficiency challenge, we view the evidence in the light
most favorable to the verdict.  Wesbrook
v. State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000).  The issue on appeal is not whether we, as a
court, believe the State=s evidence
or believe that appellant=s
evidence outweighs the State=s
evidence.  Wicker v. State, 667
S.W.2d 137, 143 (Tex. Crim. App. 1984). 
The verdict may not be overturned unless it is irrational or unsupported
by proof beyond a reasonable doubt.  Matson v. State, 819 S.W.2d 839, 846 (Tex.
Crim. App. 1991).  The jury, as the trier
of fact, Ais the sole judge of the
credibility of the witnesses and of the strength of the evidence.@  Fuentes v. State, 991 S.W.2d 267, 271
(Tex. Crim. App. 1999).  The jury may
choose to believe or disbelieve any portion of the witnesses= testimony.
 Sharp v. State, 707 S.W.2d 611,
614 (Tex. Crim. App. 1986).  When faced
with conflicting evidence, we presume the trier of fact resolved conflicts in
favor of the prevailing party.  Turro
v. State, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993).  Therefore, if any rational trier of fact
could have found the essential elements of the crime beyond a reasonable doubt,
we must affirm.  McDuff v. State,
939 S.W.2d 607, 614 (Tex. Crim. App. 1997).

In
contrast, when evaluating a challenge to the factual sufficiency of the
evidence, we view all the evidence in a neutral light and inquire whether the
jury was rationally justified in finding guilt beyond a reasonable doubt.  Zuniga v. State, 144 S.W.3d 477, 484
(Tex. Crim. App. 2004).  A reviewing
court may find the evidence factually insufficient in two ways.  Id. 
First, when considered by itself, the evidence supporting the verdict
may be too weak to support the finding of guilt beyond a reasonable doubt.  Id. 
Second, after weighing the evidence supporting the verdict and the
evidence contrary to the verdict, the contrary evidence may be strong enough
that the beyond-a-reasonable-doubt standard could not have been met.  Id. at 484B85.  In conducting the factual sufficiency review,
we must employ appropriate deference so we do not substitute our judgment for
that of the fact finder.  Id. at
481B82.  Our evaluation should not intrude upon the
fact finder=s role as the sole judge of the
weight and credibility given to any witness=s
testimony.  Cain v. State, 958
S.W.2d 404, 407 (Tex. Crim. App. 1997). 
In conducting a factual sufficiency review, we must discuss the evidence
appellant claims is most important in allegedly undermining the jury=s
verdict.  Sims v. State, 99 S.W.3d
600, 603 (Tex. Crim. App. 2003).








The
elements of the offense of delivery of a controlled substance are (1) a person,
(2) knowingly or intentionally, (3) delivers, (4) a controlled substance. Tex. Health & Safety Code Ann. '
481.112(a) (Vernon Supp. 2000); see also Cornejo v. State, 871 S.W.2d
752 (Tex. App.CHouston [1st Dist.] 1993, pet.
ref=d).  Additionally, to prove unlawful possession of
a controlled substance, the State must show that appellant exercised care,
control, and management over the contraband; and that appellant knew what he
possessed was contraband.  See Abdel‑Sater
v. State, 852 S.W.2d 671, 675 (Tex. App.CHouston
[14th Dist.] 1993, pet. ref=d).

In a
delivery or possession-with-intent-to-deliver case, intent to deliver may be
proved by circumstantial evidence.  Moss
v. State, 850 S.W.2d 788, 797 (Tex. App.CHouston
[14th Dist.] 1993, pet. ref=d).  Further, intent is a question of fact to be
determined by the trier of fact based upon circumstantial evidence adduced at
trial.  See Puente v. State, 888
S.W.2d 521, 527 (Tex. App.CSan
Antonio 1994, no pet.).  Intent can be
inferred from the acts, words, or conduct of the accused.  See id.  Finally, the control over the contraband need
not be exclusive, but can be jointly exercised by more than one person.  See McGoldrick v. State, 682
S.W.2d 573, 578 (Tex. Crim. App. 1985). 
The State introduced legally and factually sufficient evidence to show
that appellant intentionally and knowingly possessed cocaine with the intent to
deliver.  The State also introduced
evidence of several affirmative links that showed appellant=s
knowledge and control of the cocaine.  








Appellant
was driving the vehicle in which the contraband was found.  Among the affirmative links offered to show
appellant=s connection to the cocaine were
the receipts tying him to the furniture and appliances in the U-Haul and the
storage facility where items to package the cocaine were found.  The two receipts in appellant=s wallet
showed he had purchased an electric stove, air conditioner, and dryer on
September 6, 2001, and a sofa, mattress, box spring, bed frame, and television
on September 10, 2001.  Captain Miller
testified he went to a storage facility owned by Ms. Cameron and received a
search warrant for the storage unit in question.  There, he found empty packaging consistent
with packing controlled substances, as well as masking tape, empty toothpaste
boxes, empty toothpaste tubes, engine grease, and Pinesol.  Ms. Wright, the woman who rented the U-Haul,
testified that when they arrived at Mr. Mo=s
appliance shop, the proprietor stated they were to pick up some appliances that
AKenny@ had
purchased.  Ms. Wright also saw a receipt
at Mr. Mo=s shop with appellant=s name on
it.  Ms. Cameron, the owner of the
storage facility, testified she had seen both appellant=s vehicle
and the U-Haul at that location.

We
conclude the logical force from the totality of the links is sufficient for a
rational jury to have affirmatively linked appellant to the contraband and
found that appellant exercised care, custody, control, or management over the
contraband and had the intent to distribute.  See Roberson v. State, 80 S.W.3d 730, 736B42 (Tex.
App.CHouston
[1st Dist.] 2002, pet. ref=d).  Moreover, a rational jury could have found
the elements of the offense beyond a reasonable doubt.  See Swearingen v. State, 101
S.W.3d 89, 95 (Tex. Crim. App. 2003).  We
conclude the evidence is both legally and factually sufficient to support
appellant=s conviction, and overrule
appellant=s second and third issues.

C.        Did the trial court abuse its discretion
in overruling appellant=s hearsay and notice objections as to the receipts
found in appellant=s wallet?

 

In his
fourth issue, appellant argues the trial court abused its discretion in
overruling his hearsay and notice objections to the admission into evidence of the
receipts found in appellant=s walletCthe State=s
exhibits 7 and 8.  At trial, the
following exchange occurred in regard to appellant=s
objections to this evidence: 

The
State:  I tender Exhibits 7 and 8 for
inspection, Judge.

Defense
Counsel:  Judge, I object to 7 and 8 for
the same reasons. One, the items are attached to a Rule 902 affidavit. They are
hearsay. They are not admissible. Second, if they were found in Mr. Luxama=s wallet, they were the
product of an illegal search and seizure of the items that were in his wallet. 








The
Court:  Are you objecting to the
affidavit? Is that what you are objecting to? 

Defense
Counsel:  They are together. What I am
saying, it is hearsay. 

The
State:  They are business records, Judge.


The
Court:  Business records of who? 

Defense
Counsel:  They are not business records. 

The
State:  They are business records. 

The
Court:  May I see them, please? 

Defense
counsel:  I would also, if I may, talk to
you while you are reading them.

The
Court:  Just a second, please.  You are offering these as business
records?  These business records, you are
sayingBthe officer=s testimony was they were
found in Mr. Luxama=sB

The
State:  These documents were found in Mr.
Luxama=s possession. They are
business records of B

May
we approach?

The
State:  These are the same records Mr.
Green admitted in Mr. Loubeau=s case. 

The
Court:  There are different lawyers
involved in this case, Counsel.

The
State:  Yes, sir. 

Defense
Counsel:  What I wanted to tell you so it=s clear to you, I mean,
what has been said, those documents were taken out of my client=s wallet. 

The
Court:  I am not worried about search and
seizure. 

Defense
Counsel:  Somehow they got to the owner
of these businesses. They were attached with business record affidavits to them
so they wouldn=t have to call them down
here and they are hearsay, Judge. 

The
State:  This is the whole purpose of
having business records on file.

Defense
Counsel:  I didn=t have notice of it.

The
State:  They have been on file for two
years, Judge.

The
Court:  They have been on file here for
two years? 

The
State:  On file for two years.








The
Court:  Overruled.

Defense
Counsel:  Note my objection.

 

We review
a trial court=s decision to admit or exclude
evidence using the abuse-of-discretion standard.  Rankin v. State, 821 S.W.2d 230, 233 (Tex.
App.CHouston
[14th Dist.] 1991, no pet.).  A trial
court abuses its discretion when it acts in an arbitrary and capricious manner
and its decision is so clearly wrong that it lies outside the zone with which
reasonable persons might disagree.  See
Wead v. State, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004); Lewis v.
State, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995).  We conclude the trial court did not abuse its
discretion in overruling appellant=s
objections on the basis of hearsay or lack of notice.   

The rules
of evidence allow the admission of records kept in the course of regularly
conducted activities.  Tex. R. Evid. 803(6).  For a document to be properly admitted under
Texas Rule of Evidence 803(6), the proponent must prove the document was made
at or near the time of the events recorded, from information transmitted by a
person with knowledge of the events, and made or kept in the course of a
regularly conducted business activity.  Id.  The predicate for admission of a business
record may be established by an affidavit that complies with Texas Rule of
Evidence 902(10).  Id. Counsel
must provide prompt notice not only to the clerk of the court, but also to
opposing counsel according to the methods set forth in Texas Rule of Civil
Procedure 21(a) at least fourteen days prior to commencement of trial.  Tex. R.
Evid. 902(10)(a).  Proper notice
requires the attorney of record to certify compliance through a writing over
signature and on the filed instrument. Tex.
R. Civ. P. 21(a).

Rule
902(10)(a) allows for the admission of self‑authenticated business
records that are accompanied by an affidavit.  Tex. R. Evid. 902(10)(a).  This rule states that the records will be
admissible if Athe other parties to said cause
are given prompt notice by the party filing same of the filing of such record
or records and affidavit, which notice shall identify the name and employer, if
any, of the person making the affidavit.@  Id. 








Rule
902(10)(b) states that if a party follows the form provided in the rule, the
affidavit required under Rule 902(10)(a) will be sufficient.  Tex.
R. Evid. 902(10)(b).  The two
affidavits track the form of the affidavit provided in Rule 902(10)(b).  See Tex.
R. Evid. 902(10)(b).  In the trial
court, the State prosecuted Loubeau in Cause No. 11936 and appellant in Cause
No. 11937.  There is no dispute that
appellant and Loubeau were represented by the same counsel, Mr. Thomas
Niederhofer, in 2002 and that in both cases Mr. Niederhofer received notice
under Rule 902(10) of the filing of a business-records affidavit for the
documents contained in Exhibits 7 and 8. 
Mr. Niederhofer later withdrew from his representation of appellant in
the case below.  Another attorney,
Michael McNeely, represented appellant at trial.  Although notice was not re-sent, the record
demonstrates that the State filed business records affidavits for Exhibits 7
and 8 in this case in 2002.  At the time
of appellant=s trial, these affidavits had
been on file for two years.  Although Mr.
McNeely complains that these affidavits were not in the file he received when
he took over this case from Mr. Niederhofer, appellant has not cited and we are
not aware of any authority that requires the Rule 902 notice to be given again
if new counsel is substituted. 








The Rule
902(10) affidavits were sufficient and notice of their filing in this case was
given to appellant=s counsel
of record when the State filed these affidavits. Because the State complied
with the requirements of Rule 902(10), the trial court did not abuse its
discretion in admitting exhibits 7 and 8 into evidence.  See Harris v. State, 799 S.W.2d
348, 350B51 (Tex.
App.CHouston
[14th Dist.] 1990, no pet.) (rejecting a formalistic interpretation of rule
902(10) when the parties had been given notice in an earlier cause number
involving similar facts).  But even if
the trial court had erred in overruling this objection, the record does not
show this ruling would result in reversible error.  Under Texas Rule of Appellate Procedure
44.2(b), we are to disregard any error unless it affects appellant=s
substantial rights. Tex. R. App. P.
44.2(b).  A substantial right is affected
when the error had a substantial, injurious effect or influence on the jury=s
verdict.  See King v. State, 953
S.W.2d 266, 271 (Tex. Crim. App. 1997). 
In this case, there was a substantial amount of properly admitted
testimony regarding appellant=s link to
the furniture and appliances.  For
instance, the woman who actually rented the U-Haul (Wright) testified she knew
appellant and referred to him as AKenny.@  She further testified when they arrived at
Mr. Mo=s appliance
shop, Mr. Mo stated they were coming to pick up some appliances that AKenny@ had
purchased.  Ms. Wright also saw a receipt
at Mr. Mo=s shop with appellant=s name on
it.  Thus, we conclude that, even if the
trial court erred in overruling appellant=s
objection, this error would not affect appellant=s
substantial rights.  See Tex. R. App. P. 44.2(b).  We overrule appellant=s fourth
issue.

D.        Did
the trial court abuse its discretion in overruling appellant=s objection to the
introduction of extraneous-offense evidence?

 

In his fifth and final issue, appellant argues the trial court abused
its discretion by overruling his objections to the introduction of certain
extraneous-offense evidence in connection with his conduct in Brazoria County.  The State contends appellant failed to
preserve error on this issue.

Prior to
the beginning of Captain Miller=s
testimony, the trial court instructed appellant that he would have to object
whenever necessary because it was too difficult to make a ruling at the
beginning of this witness=s
testimony.  We conclude that although
some questions were asked and answered without objection, appellant made the Aextraneous
offense@
objection several times throughout this testimony.  In the context of this record, error, if any,
was preserved. 








We also
conclude Captain Miller=s
testimony was admissible, extraneous-offense evidence.  Extraneous-offense evidence that is
indivisibly connected to the charged offense may be admissible to provide
context for the offense.  See Lockhart
v. State, 847 S.W.2d 568, 571 (Tex. Crim. App. 1992); Mayes v.
State, 816 S.W.2d 79, 86B87 n.4
(Tex. Crim. App. 1991).  When an offense
is one continuous transaction, or is closely interwoven with the case on trial,
proof of all such facts is proper. 
Evidence of these extraneous offenses is admissible to show the context
in which the criminal act occurred. 
See Mayes, 816 S.W.2d at 86.  This context permits the jury to make a
realistic evaluation of the evidence because Acrimes do
not occur in a vacuum.@  Wilkerson v. State, 874 S.W.2d 127,
131 (Tex. App.CHouston [14th Dist.] 1994, pet.
ref=d).  Such evidence is admitted under the reasoning
that juries have a right to hear what occurred immediately prior to and after
the commission of the charged act so they may realistically evaluate the
evidence.  Rogers v. State, 853
S.W.2d 29, 32 (Tex. Crim. App. 1993).

ASame
transaction contextual evidence@ is
evidence that illuminates the nature of the crime charged by imparting to the
trier of fact information essential to understanding the context and
circumstances of events that, although legally separate offenses, are blended
and interwoven.  See Camacho v. State,
864 S.W.2d 524, 532 (Tex. Crim. App. 1993). 
Even if Asame
transaction contextual evidence@ is not
necessary to the jury=s
understanding of the primary offense in a given case, that fact does not change
the character of the evidence as Asame
transaction contextual evidence.@  See Rogers, 853 S.W.2d at 33.








In this
case, Captain Miller=s
testimony was relevant and served as background evidence admitted to show the
context in which the criminal act occurred. 
Captain Miller had been investigating the MV Salome, suspected
for narcotics trafficking, and believed the ship was going to come into
Freeport, Texas.  As part of his
investigation of the storage facility, he 
found empty packaging consistent with the packaging of controlled
substances, in addition to finding masking tape, empty toothpaste boxes and
tubes, and Pinesol, all of which were used to package and mask the drugs
ultimately found in the U-Haul appellant was driving.  This same U-Haul had been seen at the storage
facility and appellant=s vehicle
was found there.  When, as in this case,
an offense is one continuous transaction, or is closely interwoven with the
case on trial, proof of all such facts is proper.  See id.  We conclude Captain Miller=s testimony
was relevant and admissible to show the context in which the criminal act
occurred. Accordingly, we overrule appellant=s fifth
issue. 

Having
overruled all of appellant=s issues,
we affirm the trial court=s
judgment.

 

/s/        Kem Thompson Frost

Justice

 

Judgment rendered and Memorandum Opinion filed
February 14, 2006.

Panel consists of Justices Hudson, Frost, and
Seymore.

Do Not Publish C Tex. R. App. P. 47.2(b).

 

 











[1]  Although
standing was not raised before the trial court, standing may be raised for the
first time on appeal. See State v. Klima, 934 S.W.2d 109, 111 (Tex.
Crim. App. 1996).