COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS


| | | |
|---|---|---|
| LUIS AMAYA, | § | No. 08-11-00265-CR |
| Appellant, | § | Appeal from the |
| v. | § | Criminal District Court No. 1 |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC#20110D01529) |
| | § | |

**O P I N I O N**

Appellant Luis Amaya was indicted for possession of cocaine in an amount less than one gram. Pursuant to a plea agreement, Appellant pleaded guilty to the charged offense and the trial court placed Appellant on ten months' community supervision. In three issues on appeal, Appellant argues the trial court erred in denying his motion to suppress and motion to dismiss the indictment due to prosecutorial vindictiveness. For the following reasons, we affirm.

**PROCEDURAL AND FACTUAL BACKGROUND**

Prior to trial, Appellant moved to suppress all tangible evidence seized in connection with his detention and arrest. Specifically, Appellant asserted that his detention and arrest were unlawful and without probable cause and therefore all of the evidence obtained as a result of his

detention should be excluded.

On March 20, 2011, El Paso Deputy Sheriff Omar Montoya was on general patrol in the Montana Vista area. Deputy Montoya testified that the Montana Vista area was "somewhat" of a high crime area. That evening, he and his partner conducted a general business check[1] at Las Jarritas Bar. When Deputy Montoya walked into the bar, he went straight to the restroom and did not notice anything out of the ordinary. He then went to stand at the entrance of the business where he observed Appellant standing directly in front of him at the bar area. Appellant was standing no more than five feet away from him. Appellant turned around to look at Deputy Montoya and when Appellant turned away, Deputy Montoya noticed that Appellant had a white powdery substance on the outside of his nostril. Deputy Montoya had not received any reports of drug activity occurring at the bar. However, Deputy Montoya testified that based on his training and experience, he believed that the white powdery substance was cocaine.[2] He explained that cocaine is ingested through the nose and that he had seen this type of behavior several times.

Deputy Montoya, who was in uniform, approached Appellant at the bar area and saw the powder on Appellant's nose. Deputy Montoya asked Appellant if he had an ID on him and as Appellant "start[ed] reaching for his pockets and stuff like that," Deputy Montoya asked Appellant to step outside. Deputy Montoya testified that at this point, he believed Appellant was engaging in criminal activity. As Appellant stepped outside the establishment, Deputy Montoya saw Appellant drop a baggie containing a white powdery substance at the exit of the

---

[1] Deputy Montoya explained that during a general business check they go into bars to check for underage drinking, public intoxication, disturbances, and anything illegal that they can address. He further explained that they usually go into the restrooms because they find a lot of patrons use the restroom to do narcotics.

[2] When asked by defense counsel on redirect examination, if he had based his conclusion on a hunch that the substance on Appellant's nostril was cocaine, Deputy Montoya replied, "Yes, sir."

2

bar.

At that point, Appellant was asked to step to the hood of a truck that was parked at the entrance of the business. Deputy Montoya's partner secured the substance that Appellant dropped at the exit of the bar. Appellant was then asked to place his hands on the hood of the truck and to not reach into his pockets. Deputy Montoya explained that he did not want Appellant to reach into his pockets because he was not sure if there were any weapons or narcotics in his pockets at that time. The substance field tested positive for cocaine. Appellant was then advised of his rights and placed under arrest and handcuffed.

Guadalupe Soriano testified that she and two other friends were with Appellant at Las Jarritas Bar the night he was arrested for possession of cocaine. They had been at the bar for about half an hour to an hour before the deputy entered the bar. She described the lighting of Las Jarritas as being dark as you go into the bar and that people's faces cannot be seen very clearly in the bar lighting.

According to Soriano, when the deputy approached Appellant, the deputy tapped Appellant on the shoulder and asked Appellant to go outside with him. The deputy grabbed Appellant by the arm and the two turned around and went outside. On cross-examination by the State, Soriano testified that it did not surprise her that Appellant had cocaine on him. She explained that when the deputy grabbed Appellant by the arm, the deputy was not dragging him out of the bar, but rather he had just grabbed Appellant to go outside. She further testified that the deputy was not mean, did not have his gun out, and did not put Appellant in handcuffs inside the bar. On redirect, Soriano testified that she did not notice any white substance on Appellant while she was seated two feet away from him.

Finally, Xavier Lucero, Appellant's court-appointed investigator, testified that he took

3

the photographs of Las Jarritas Bar that were admitted into evidence. Lucero went to the bar and measured the distance from the edge of the bar area to the front door of the bar. The distance was eleven feet. He testified that someone's description of that distance as being less than five feet would not be accurate. Lucero testified that the lighting in the bar was "pretty dim, pretty dark." In his opinion, based on the bar's lighting, he would not be able to detect a white substance on a person's nostril from eleven feet away. On recross, Lucero testified that if he was in a bar at night and saw someone with a white powdery substance on their nose, he would think it was probably cocaine. According to Lucero, this assumption would be based on a hunch.

After the hearing, the trial court denied Appellant's motion to suppress. Immediately after its ruling, defense counsel indicated that the parties could resolve the case that day. After the parties entered into a discussion, they determined the case could not be resolved at that time.[3] The next day, a status hearing was held because Appellant set his case for a plea to the indictment. At that hearing, the trial court informed the parties that if the State would not consent to waive a jury trial, the trial court was not authorized to accept a plea from Appellant. Appellant indicated that he already knew that. Appellant noted that his case was set for trial and requested that it be specially set for the Monday of the next week. The trial judge indicated that she would not be present that week so Appellant should urge that to the presiding judge at that time.

On August 1, 2011, the day Appellant's case was set for trial, Appellant filed a motion to dismiss the indictment due to prosecutorial vindictiveness. At the end of the pretrial hearing,

---

[3] The record does not reflect what the parties discussed, but instead the hearing transcript only indicates that the attorneys were talking quietly.

the trial court denied Appellant's motion to dismiss and set the case as the "number one" case to be heard that day. The parties subsequently entered into a plea bargain agreement. The trial court accepted the plea bargain agreement and placed Appellant on community supervision for ten months. This appeal followed.

## DISCUSSION

Appellant raises three issues for our review. In Issues One and Two, Appellant challenges the trial court's denial of his motion to suppress. In Issue Three, Appellant contends that the trial court erred in denying his motion to dismiss the indictment due to prosecutorial vindictiveness. Because Issues One and Two are related, we address them together.

## MOTION TO SUPPRESS

In two issues, Appellant contends the trial court erred in denying his motion to suppress because: (1) Officer Montoya lacked reasonable suspicion to detain him and thus, his detention was unlawful; and (2) the abandoned cocaine was inadmissible evidence because it was the fruit of the poisonous tree. The State responds that when the evidence is viewed in the light most favorable to the trial court's ruling, the evidence supports the implicit finding and conclusion that Appellant was not seized or detained at the time he dropped the baggie of cocaine on the ground when exiting the bar, and that the interaction between Deputy Montoya and Appellant was merely a voluntary encounter.

### *Standard of Review and Applicable Law*

We review the trial court's ruling on a motion to suppress for an abuse of discretion under a bifurcated standard. *Martinez v. State*, 348 S.W.3d 919, 922-23 (Tex.Crim.App. 2011). The trial court is the sole fact finder and is free to believe or disbelieve any or all of the evidence presented at a suppression hearing. *Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex.Crim.App.

5

2007). The evidence adduced at a suppression hearing is viewed in the light most favorable to the trial court's ruling. *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex.Crim.App. 2008). We give almost total deference to a trial court's rulings on questions of historical fact and application of law to fact questions that turn on an evaluation of credibility and demeanor, but we review *de novo* application of law to fact questions that do not turn on credibility and demeanor. *Amador v. State*, 221 S.W.3d 666, 673 (Tex.Crim.App. 2007); *Estrada v. State*, 154 S.W.3d 604, 607 (Tex.Crim.App. 2005).

Where, as here, the trial court does not make explicit findings of fact, we infer the factual findings that support the trial court's ruling if the record supports the implied fact findings. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex.Crim.App. 2008); *State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App. 2000). But the question of whether a given set of historical facts amount to a consensual police-citizen encounter or a detention under the Fourth Amendment is an issue of law that is reviewed *de novo*. *Garcia-Cantu*, 253 S.W.3d at 241. We will uphold the trial court's ruling if it is reasonably supported by the record and correct under any theory of law applicable to the case. *Valtierra v. State*, 310 S.W.3d 442, 447-48 (Tex.Crim.App. 2010); *State v. Dixon*, 206 S.W.3d 587, 590 (Tex.Crim.App. 2006).

Three categories of interactions between police officers and citizens exist: encounters, investigative detentions, and arrests. *State v. Woodard*, 341 S.W.3d 404, 411 (Tex.Crim.App. 2011); *State v. Castleberry*, 332 S.W.3d 460, 466 (Tex.Crim.App. 2011). A court examines the totality of the circumstances in determining which of the categories is implicated by a police officer-citizen interaction. *Crain v. State*, 315 S.W.3d 43, 49 (Tex.Crim.App. 2010). If a defendant asserts such an interaction is a seizure rather than an encounter, he bears the initial

6

burden of establishing that the interaction was a seizure rather than an encounter. *See Woodard*, 341 S.W.3d at 413.

The difference between a detention and encounter is that a detention implicates the Fourth Amendment's search and seizure restrictions and requires articulable suspicion to support a temporary seizure, while an encounter is not subject to those requirements or restrictions. *Garcia-Cantu*, 253 S.W.3d at 238. In short, an encounter is a seizure-free interaction between a police officer and a citizen, and because the citizen is under no compulsion to remain, a police officer is not required to possess any particular level of suspicion before interacting with a citizen. *Hawkins v. State*, 758 S.W.2d 255, 259 (Tex.Crim.App. 1988); *Daniels v. State*, 718 S.W.2d 702, 704 (Tex.Crim.App. 1986). A police officer, without reasonable suspicion, can request identification and information from a citizen. *Woodard*, 341 S.W.3d at 411. A citizen's acquiescence to a police officer's request for information does not change the consensual nature of the encounter even if the police officer did not tell the citizen that his request for information may be ignored. *Id.* However, in order to justify an investigative detention, a police officer "must have reasonable suspicion founded on specific, articulable facts which, when combined with rational inferences from those facts, would lead the officer to conclude that a particular person actually is, has been, or soon will be engaged in criminal activity. *Crain*, 315 S.W.3d at 52.

There is no bright-line test to determine when a consensual encounter becomes a seizure; however, ordinarily an encounter is no longer consensual when a police officer through force or a show of authority restrains a citizen's liberty. *Woodard*, 341 S.W.3d at 411. A citizen is seized under the Fourth Amendment when, taking into account all of the circumstances surrounding the encounter, the police officer's conduct would have communicated to a

7

reasonable person that he was not free to disregard the police's presence and continue about his business. *Garcia-Cantu*, 253 S.W.3d at 242; *see also Hernandez v. State*, 376 S.W.3d 863, 872 (Tex.App. – Fort Worth 2012, no pet.) (in order for an encounter to become a Fourth Amendment seizure a police officer must make a show of authority to which a citizen submits). No seizure under the Fourth Amendment occurs where such a person has the option of ignoring the police officer's request or terminating the interaction. *Woodard*, 341 S.W.3d at 411. Examples of factors that can be considered in determining whether an interaction is an encounter or detention include, the threatening presence of several officers, the officer's display of a weapon, some physical touching of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request is required. *Crain*, 315 S.W.3d at 49-50. However, the most important fact to take into account when determining whether an interaction was a consensual encounter or a Fourth Amendment seizure is the police officer's conduct. *Woodard*, 341 S.W.3d at 411.

*Analysis*

On appeal, Appellant maintains that there was no consensual encounter and that under the facts of this case a reasonable person under the circumstances would not have believed he was free to leave. Appellant supports this contention by noting the following facts: (1) Deputy Montoya was uniformed and armed when he approached Appellant in the bar; (2) Deputy Montoya asked Appellant for identification; (3) Deputy Montoya touched Appellant on the shoulder; (4) Deputy Montoya twice asked Appellant to step outside; and (5) Deputy Montoya grabbed Appellant by the arm and escorted him out of the bar. Because the trial court did not issue findings of fact or conclusions of law, we imply the necessary fact findings that are supported by the evidence. *State v. Kelly*, 204 S.W.3d 808, 818-19 (Tex.Crim.App. 2006).

8

Based on the record, we cannot conclude that Appellant met his initial burden for establishing that this was not a consensual encounter. *See Woodard*, 341 S.W.3d at 413. To the contrary, the record supports an implied finding by the trial court that the interaction was an encounter. Although Deputy Montoya was in uniform and armed when he approached Appellant at the bar, nothing in the record reveals that Deputy Montoya approached him in a threatening manner. Deputy Montoya did not have his gun displayed when he approached Appellant. Soriano, Appellant's friend who was present when Deputy Montoya approached Appellant testified that the deputy was not mean and did not put Appellant in handcuffs inside the bar.

As far as Deputy Montoya physically touching Appellant, the record contains conflicting evidence. On cross-examination, Deputy Montoya testified that he had not touched Appellant while they were inside the bar nor when he asked Appellant to step outside. Similarly on redirect, he testified that he never laid a hand on Appellant. However, Soriano testified that when the deputy approached Appellant, the deputy tapped Appellant on the shoulder or hand. According to Soriano, Deputy Montoya also grabbed Appellant's arm, and after that the deputy and Appellant turned around and left the bar. When asked if the deputy had just put his hand on Appellant's arm or if he was dragging Appellant out of the bar, Soriano replied, "No, no, he just grabbed him to go outside." As the sole judge of the witnesses' credibility at the suppression hearing the trial court could have decided to believe Deputy Montoya's testimony and disbelieve Soriano's testimony. *Wiede*, 214 S.W.3d at 24-25.

Additionally, nothing in the record reflects that Deputy Montoya used language or a particular tone of voice when he asked Appellant if he had any identification on him and twice asked Appellant to step outside that conveyed a message that Appellant was not free to disregard

9

the deputy's requests. *See Crain*, 315 S.W.3d at 49-50 (noting that police officer's language or tone of voice is a factor in distinguishing between a seizure and an encounter). Furthermore, a mere request for an individual's identification does not necessarily mean that a seizure, and not an encounter, has occurred. *See Castleberry*, 332 S.W.3d at 468 (concluding that interaction between officer and two men was an encounter where officer asked them for identification after observing them walk behind a closed business at 3 a.m. in a high crime area). Here, Deputy Montoya testified that when he asked Appellant to step outside he was not ordering him to go outside and Appellant was free to disobey his request.

When we view the evidence in the light most favorable to the trial court's ruling, we conclude that the trial court could have determined that a reasonable person in Appellant's position would have believed that he was free to ignore Deputy Montoya's requests or terminate the interaction, and thus, the interaction between Appellant and Deputy Montoya was a voluntary encounter rather than a Fourth Amendment seizure. *See Shepherd*, 273 S.W.3d at 684; *State v. Perez*, 85 S.W.3d 817, 819 (Tex.Crim.App. 2002) (explaining that in an encounter, a police officer may approach an individual in a public place, and request information if he is willing to listen); *Paulea v. State*, Nos. 04-09-00293-CR, 04-09-00294-CR, 04-09-00295-CR, 2010 WL 1068176, at *5 (Tex.App. – San Antonio Mar. 24, 2010, pet. ref'd) (mem. op.) (not designated for publication) (holding that police-citizen interaction where police officer asked citizen to exit his hotel room and talk did not constitute an unlawful detention).

**Abandoned Property**

In Issue Two, Appellant argues the abandonment of the cocaine at the exit of the bar was the result of improper police conduct, and as such the "fruit of the poisonous tree" doctrine barred use of that evidence. He also maintains the State failed to establish that the

10

abandonment of the contraband was not directly related to his unlawful detention or that the attenuation doctrine was satisfied. The State responds that no seizure of the abandoned baggie of cocaine occurred because Appellant voluntarily abandoned the contraband independent of any police misconduct.

There is no seizure under the Fourth Amendment if a police officer takes possession of voluntarily abandoned property. *Hawkins*, 758 S.W.2d at 257; *see also Armstrong v. State*, 966 S.W.2d 150, 153 (Tex.App. – Austin 1998, no pet.) (stating appellant not entitled to constitutional and statutory search and seizure protection because Fourth Amendment does not protect a person who voluntarily abandons his property). A defendant abandons property if: (1) he intended to abandon the property, and (2) his decision to abandon the property was not the result of police misconduct. *Swearingen v. State*, 101 S.W.3d 89, 101 (Tex.Crim.App. 2003). Before examining whether Appellant voluntarily abandoned the baggie of cocaine upon exiting the bar independent of any police misconduct, the threshold inquiry is whether Appellant was the victim of an illegal arrest of unwarranted investigative stop. *Hawkins*, 758 S.W.2d at 259.

*Analysis*

As we have already concluded that the record supports the trial court's implicit finding that the interaction between Officer Montoya and Appellant inside the bar was an encounter and not a detention, the threshold inquiry has been met. Next, we must determine whether Appellant voluntarily abandoned his property. The record reflects that the only evidence describing Appellant's abandonment of the cocaine baggie was the testimony of Deputy Montoya.

According to Deputy Montoya, when Appellant started to walk outside, Appellant started to fiddle and mess with his right pant pocket. Deputy Montoya then asked Appellant to keep

11

his hands out of his pocket. As soon as Appellant took his first step outside the establishment, he dropped a baggie containing a white powdery substance at the exit of the bar. Deputy Montoya testified that he did not reach into Appellant's pocket for the cocaine and did not tell him that he had to empty his pockets. Deputy Montoya further testified he did not have anything to do with Appellant's decision to pull the cocaine out of his pocket. Viewed in the light most favorable to the trial court's ruling, we conclude that when Appellant threw the baggie of cocaine onto the ground as he was exiting the bar Officer Montoya had not seized him and when Appellant abandoned the baggie of cocaine Deputy Montoya had not interfered with Appellant's freedom or otherwise detained him. *See Calderon v. State*, No. 08-08-00257-CR, 2010 WL 658651, at *4 (Tex.App. – El Paso Feb. 24, 2010, no pet.) (not designated for publication) (where interaction between police officer and appellant was consensual encounter, appellant voluntarily abandoned property because he had not been detained before he abandoned the contraband). Accordingly, the abandonment of the contraband was not the result of police misconduct rather it was a voluntary abandonment by Appellant. *Hawkins*, 758 S.W.2d at 257-58; *Armstrong*, 966 S.W.2d at 153.

Based on the foregoing, we conclude that the trial court did not abuse its discretion in denying Appellant's motion to suppress. *Martinez*, 348 S.W.3d at 922-23. Issues One and Two are overruled.

## MOTION TO DISMISS

In Issue Three, Appellant contends the trial court erred when it denied his motion to dismiss the indictment based on a violation of his due process rights when the State engaged in prosecutorial vindictiveness by offering prison time on a mandatory probation case following the motion to suppress hearing.

12

**Prosecutorial Vindictiveness**

It is well-recognized that prosecutors have broad discretion in deciding which cases to prosecute. *Neal v. State*, 150 S.W.3d 169, 173 (Tex.Crim.App. 2004). Courts are required to presume that the State undertakes a criminal prosecution in good faith and in nondiscriminatory fashion. *Id*. However, a defendant's due process rights can be violated by a decision to prosecute when the charges are brought in retaliation due to a defendant's exercise of his legal rights. *Id*. Therefore, under certain circumstances, the presumption that a criminal prosecution is undertaken in good faith is rebuttable. *Id*. To establish a claim for prosecutorial vindictiveness a defendant must show: (1) proof of circumstances that pose a realistic likelihood of such misconduct sufficient to raise a presumption of prosecutorial vindictiveness, which the State must rebut or face dismissal of the charges; or (2) proof of actual vindictiveness by presenting direct evidence that the prosecutor's charging decision is an unjustifiable penalty resulting solely from the defendant's exercise of a protected legal right. *Id*. We need not address the first prong, if a defendant is unable to establish the actual vindictiveness prong. *Id*. at 175.

Here, Appellant points out that he argued both prongs of *Neal* to the trial court. However, on appeal, his argument focuses only on actual prosecutorial vindictiveness, the second prong of *Neal*. To establish a claim of actual vindictiveness, a defendant must show, through objective evidence, that the prosecutor's charging decision "was a 'direct and unjustifiable penalty' that resulted 'solely from the defendant's exercise of a protected legal right.'" *Id*. at 174 (internal citations omitted). Under the second prong, the defendant shoulders the burden of both production and persuasion, unaided by any legal presumption. *Id*.

It is the trial court that decides the ultimate factual issue based upon the evidence and

credibility determinations. *Id*. at 174-75. In making its factual and credibility determinations, the trial court is entitled to believe the prosecutor's explanations. *See Hood v. State*, 185 S.W.3d 445, 448 (Tex.Crim.App. 2006) (holding State rebutted prosecutorial vindictiveness presumption because trial court was entitled to believe State's assertion that it had mistakenly omitted enhancement paragraphs); *Ex parte Legrand*, 291 S.W.3d 31, 43 (Tex.App. – Houston [14th Dist.] 2009, pet. ref'd) (concluding trial court did not err in finding State had not engaged in prosecutorial vindictiveness where trial court was entitled to believe prosecutor's explanation that increased charges against appellant were not to punish her, but rather addressed an evidentiary problem). We review a trial court's factual findings for clear error, but we apply a *de novo* standard of review to the trial court's application of guiding legal principles. *See id*. at 42.

*Analysis*

In his motion to dismiss, Appellant alleged: (1) he exercised his legal right to contest the seizure of his person under the Fourth Amendment and Article 38.23 of the Code of Criminal Procedure; (2) the prosecutor sought to have Appellant agree to an illegal sentence after the denial of his motion to suppress; (3) the prosecutor refused to waive its right to trial after Appellant rejected the State's recommended illegal sentence thereby ensuring that Appellant remain in jail longer; and (4) the prosecutor further ensured Appellant stayed incarcerated for a longer period of time because although his trial was set to commence five days after he attempted to enter a guilty plea, the prosecutor knew another trial was specially set for the same date. Appellant further argued the only reason the State recommended an illegal sentence and refused to waive its right to a jury trial was to punish him for exercising his right to contest an unreasonable search and seizure.

14

At the pretrial hearing, Appellant argued the only motive he could see behind the prosecutor's offer of an illegal sentence and refusal to waive the jury trial was because Appellant filed a motion to suppress. He urged the prosecutorial vindictiveness was evidenced by the fact that defense counsel wanted to quickly resolve the case after the suppression hearing because it was a mandatory probation case, but the prosecutor recommended two years in jail and refused to waive its right to a jury trial. According to Appellant, the prosecutor told defense counsel the motion to suppress was frivolous and County resources and time had been wasted. Appellant maintained that his case had been set for trial, and the State failed to notify him that another trial was scheduled to take place the same day which indicated to Appellant the State wanted to keep him in jail until the next setting.

In rebuttal, the State's position was that its plea offer was probation and that nothing was ever said about Appellant doing jail time. According to the State, the prosecutor never said the recommendation was time, but rather after the suppression hearing, the prosecutor told Appellant that the recommendation would not be the same and that they needed to talk about it. The State acknowledged this was a mandatory probation case under Article 42.12 of the Code of Criminal Procedure. However, the State maintained Appellant had no right to plead guilty to the Court without the State's permission.

In response to the trial court's question as to why the State would not waive a jury if Appellant was willing to plead guilty and have the Court assess the probationary term, the State made clear it wanted to be involved in the plea bargain process and have some say as far as the length of the term and conditions of probation. The State explained it was the prosecution's understanding Appellant did not want the State's input and did not want to deal with the prosecution. When the trial court suggested the State would have input in the punishment phase

15

of trial, the State explained if it were to allow blind pleas, it could result in more costs rather than less costs. The State informed the trial court it was ready to waive a jury trial and put on a punishment case that day, but clarified that the prior week when Appellant wanted to enter an open plea to the court, the State was not prepared to present its punishment evidence.

In his brief, Appellant references facts set forth in an affidavit he filed on August 5, 2011, nine days after the trial court entered the order denying his motion to suppress. However, as the State correctly points out, this Court may not consider factual assertions that are outside of the record and thus, we do not consider Appellant's affidavit on appeal. *See Whitehead v. State*, 130 S.W.3d 866, 872 (Tex.Crim.App. 2004) ("An appellant court may not consider factual assertions that are outside the record, and a party cannot circumvent this prohibition by submitting an affidavit for the first time on appeal"); *Williams v. State*, Nos. 14-06-00680-CR and 14-06-00681-CR, 2007 WL 2183108, at *3 n.3 (Tex.App. – Houston [14th Dist.] July 31, 2007, no pet.) (mem. op.) (not designated for publication) (striking and refusing to consider appellant's affidavits that were filed with the trial court after judgment had been entered). Finally, Appellant asserts that there is direct evidence in the record supporting a dismissal due to prosecutorial vindictiveness because the prosecutor's decision to pursue a prison sentence where the law only authorized probation was an unjustifiable penalty resulting solely from Appellant exercising his right to pursue a suppression hearing. However, it was well within the discretion of the trial court to believe the State's explanations that the prosecutor never told Appellant that the plea offer was jail time, that the prosecutor wanted to be involved in the plea bargain process, and that the prosecutor was not prepared to present punishment evidence when Appellant previously wanted to enter an open guilty plea. *See Hood*, 185 S.W.3d at 448; *Legrand*, 291 S.W.3d at 43. Accordingly, we conclude that Appellant failed to meet his burden of proving his

claim of actual prosecutorial vindictiveness and that the trial court did not err in denying Appellant's motion to dismiss the indictment. *See Ortegon v. State*, 267 S.W.3d 537, 542 (Tex.App. – Amarillo 2008, pet. ref'd) (where trial court, as fact finder, accepted prosecutor's explanation to prosecutorial vindictiveness allegation and denied appellant's motion to dismiss, appellate court could not say trial court's finding was error). Issue Three is overruled.

## CONCLUSION

We affirm the trial court's judgment.


GUADALUPE RIVERA, Justice

October 9, 2013

Before McClure, C.J., Rivera, and Rodriguez, JJ.

(Do Not Publish)

17